**WESTFIELD INSURANCE COMPANY, Appellee,**

v.

**ROBERTS, Appellant;**

**Farley, Intervening Appellant.**

[Cite as *Westfield Ins. Co. v. Roberts* (1993), 88 Ohio App.3d 532.]

Court of Appeals of Ohio,
Lake County.

Nos. 92–L–152, 92–L–155.

Decided July 6, 1993.

*Martin J. Murphy* and *Dennis R. Fogarty,* for appellee.

*Lawrence E. Stewart* and *Samuel V. Butcher,* for appellant.

*James K. Farrell, Jr.,* for intervening appellant.

NADER, Judge.

This is an appeal from the judgment of the Lake County Court of Common Pleas granting plaintiff-appellee's motion for summary judgment.

The appellee, Westfield Insurance Company ("Westfield"), filed a declaratory judgment action seeking to determine its obligation under a policy of home-owner's insurance to defend and indemnify the insured, defendant-appellant Theodore S. Roberts ("Roberts"), in a tort suit commenced by intervenor-appellant Christopher D. Farley ("Farley").

On October 22, 1989, Roberts pled guilty to felony charges of sexual battery in violation of R.C. 2907.03, and gross sexual imposition, R.C. 2907.05, in connection with the criminal act of sodomy with Farley, an allegedly retarded minor.

On April 18, 1991, a civil action against Roberts was instituted by Farley through his mother, alleging the unlawful sexual activity for which Roberts was convicted, and resulting emotional injury. Subsequently, Westfield filed the instant action to clarify its duties under the homeowner's insurance policy covering Roberts.

Westfield moved for summary judgment on the ground that an exclusion in the homeowner's insurance policy relieved it from any obligations under the policy relating to the underlying tort claim. The exclusion reads:

"Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

"a. Which is expected or intended by the insured * * *."

Concluding that "the intent to injure must be inferred from the combination of (a) the sexual nature of the offense, (b) the minority of the victim," the trial court granted the motion.

Roberts and Farley separately appealed this judgment. The appeals were consolidated upon motion. Appellants' first assignment of error reads:

"The trial court erred in granting Westfield's motion for summary judgment where there was no evidence of an expectation or intent to injure."

For their second assignment of error, each appellant claims error in the failure of the trial court to grant their respective motions for summary judgment.

Appellants argued to the trial court and on this appeal that summary judgment was improper as there exists a genuine issue of material fact. Civ.R. 56(C). Appellants contend that Westfield failed to satisfy its burden of showing that Roberts intended to harm Farley in committing the acts for which he was convicted. Appellants rely on *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906.

The precise issue presented by this appeal, whether an intent to injure may be inferred as a matter of law from the intentional act of sexually molesting a minor, has not been decided by the Ohio Supreme Court. We note that two Ohio appellate courts have held in the affirmative. In *Young v. All Am. Ins. Co.* (1992), 81 Ohio App.3d 493, 611 N.E.2d 421, the Ross County Court of Appeals found that where the insured's former wife on three occasions transported the minor daughter to places where the daughter was sexually assaulted by the same person, and the wife blindfolded the minor and removed minor's clothing, the wife's intent to injure could be inferred as a matter of law, thereby invoking the intentional injury exclusion of the insured's homeowner's policy.[1] In *Motorists Mut. Ins. Co. v. Martin* (Feb. 20, 1992), Cuyahoga App. No. 62418, unreported, 1992 WL 31130, the insured pled guilty to a violation of sexual battery, R.C. 2907.03. The court reasoned that as the offense required elements of knowledge, and not mere involuntary or negligent acts as was involved in *Swanson,* it was proper to infer the intent to harm on the insurer's summary judgment motion, and relieve the insurer from the obligation of defending the minor victim's tort claims. But in *Forbes v. Fair* (Feb. 3, 1993), Summit App. No. 15762, unreported, 1993 WL 27406, a case in which the insurer pled guilty to gross sexual imposition, R.C. 2907.05(A)(3), the court rejected the claim that intent to injure the minor could be inferred from the fact of the insured's conviction, as the stated elements of the offense do not "necessarily involve hurting anyone," but concluded that, despite his later denial of the criminal acts at the bench trial in the declaratory judgment action, he could be found to have intended the harm on the basis of his testimony that if "somebody" did those acts, it would be harmful to the child.

Appellants' argument in the instant case that the judgment on appeal is contrary to the rule established in *Swanson, supra,* at first blush has some force. However, a close examination of the majority opinion in *Swanson* negates this conclusion.

*Swanson* involved an injury caused by a BB gun. Two groups of teenage children near a swimming area exchanged some insulting words and gestures. Three of the children from one group later returned to the area with the BB gun, and, subsequently, one of the children from the second group was injured by the gun, resulting in the loss of an eye. The testimony of the trigger person, Swanson, was to the effect that he was standing seventy to one hundred feet away and was aiming at a sign near the others when he shot the BB gun. He

---

1. While the insurance policy in *Young* contained an exclusion for sexual molestation, the court did not rely upon this in reaching its decision. See 81 Ohio App.3d at 500, 611 N.E.2d at 425, fn. 3.

intended merely to scare the group and did not believe he would hit them. Apparently finding the testimony persuasive, the trial court in the case found:

" 'The evidence does not support a finding that William Swanson shot the B–B gun with the intent to injure anybody or with the belief that such injury was substantially certain to occur.' " *Swanson,* 58 Ohio St.3d at 190, 569 N.E.2d at 908.

Due to the accidental nature of the injury, the insurers were declared to have a duty to defend and indemnify Swanson. The exclusionary language of the policy involved in *Swanson* was identical to the one involved in the instant case.

The court of appeals in *Swanson* reversed on *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. Applying the same exclusionary language to a situation where the insured had pled guilty to aggravated murder of an eleven-year-old girl with specifications, an essential element of which is the intent to cause death, the court concluded that the policy did not provide coverage for any of Gill's personal liability. Noting that Swanson intentionally fired the gun in Todd's general direction, the court of appeals reasoned "that it is the intentional nature of the act of the insured, rather than the result of such an act, such as is the specific injury to Todd's right eye, which determines whether coverage will apply." *Swanson,* 58 Ohio St.3d at 190, 569 N.E.2d at 908.

The Supreme Court reinstated the trial court's judgment over the vigorous dissent of three justices. Citing numerous cases from other states which reflect the majority position on the issue, the Supreme Court held:

" * * * that in order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended. It is not sufficient to show merely that the act was intentional. In this case the exclusion is inapplicable because the trial court's determination that Todd Baker's injury was not intentionally inflicted or substantially certain to occur is supported by competent, credible evidence." *Id.,* 58 Ohio St.3d at 193–194, 569 N.E.2d at 911.

Quoting *Farmers Ins. Group v. Sessions* (1980), 100 Idaho 914, 917, 607 P.2d 422, the court reasoned that any other conclusion "would radically alter the scope of insurance company liability. On an exclusion such as this one, the company would have no liability for the baseball intentionally thrown which accidentally breaks the neighbor's window, the intentional lane change which forces another driver into the ditch, or the intentionally started trash fire which spreads to the adjacent lot. Countless other examples are imaginable, in all of which the insurance company could rely on such an exclusion to avoid liability because the

course of conduct of the insured involved intentional acts. * * * " *Swanson,* 58 Ohio St.3d at 193, 569 N.E.2d at 910.

The "overwhelming majority" of states which have considered cases involving child molestation have concluded that an intent to injure may be inferred as a matter of law from the crime itself. See *Worcester Ins. Co. v. Fells Acres Day School, Inc.* (1990), 408 Mass. 393, 558 N.E.2d 958, listing decisions. Appellants' claim that *Swanson* mandates the opposite result is unpersuasive.

Several of the cases cited by the majority in *Swanson* to support its position were in jurisdictions which, prior to the date of the decision in *Swanson,* had permitted the inference of intent in child molestation cases. For instance, the court in *Swanson,* 58 Ohio St.3d at 193, 569 N.E.2d at 910–911, quotes *Quincy Mut. Fire Ins. Co. v. Abernathy* (1984), 393 Mass. 81, 469 N.E.2d 797. The quoted passage in *Swanson* was also quoted in *Worcester Inc. Co., supra,* as correctly reflecting the applicable law requiring proof of intent to injure. The Supreme Judicial Court of Massachusetts distinguished child molestation cases on the basis that the act and the injury caused by the act are "virtually inseparable." *Worcester,* 408 Mass. at 400, 558 N.E.2d at 964.

Similarly, when the *Swanson* court cited a federal appellate case applying Florida law with respect to "intentional injury" exclusions, the Supreme Court of Florida had decided two years before the case of *Landis v. Allstate Ins. Co.* (Fla.1989), 546 So.2d 1051. In *Landis,* the representatives of the minor victims contended that the trial court should not have granted summary judgment in favor of the insurer in its declaratory judgment action insofar as there was a genuine issue whether the insureds specifically intended to commit harm in sexually molesting the children left in their care in a child care facility. The court upheld the decision which found no duty on the part of the insurer to defend or indemnify the insured. The court adopted the reasoning of Judge Franks in his dissenting opinion in *Zordan v. Page* (Fla.App.1986), 500 So.2d 608. Judge Franks stated at 613:

"I am absolutely unwilling to deny the foreseeability of injury to a child who is subjected to sexual abuse. It defies human response and sensitivity to conclude that the inevitable product of the sexual molestation of a child is not intended. That conduct inescapably inspires some response in the minor victim. Whether the response is a stimulation of the libido, and utter revulsion, or simply confusion, the child suffers grave psychological injury."

The statement of Judge Franks was also quoted in the California Supreme Court case of *J.C. Penney Cas. Ins. Co. v. M.K.* (1991), 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689. While construing a general statute rather than the "intentional injury" exclusion of the insurance policy, the court emphasized that

the statute, Section 533, does not encompass "willful acts" divorced from the intent to harm:

"In short, section 533 does not preclude coverage for acts that are negligent or reckless. We find nothing in the statute, however, to support defendant's view that a child molester can disclaim an intent to harm his victim. There is no such thing as negligent or even reckless sexual molestation. The very essence of child molestation is the gratification of sexual desire. The act is the harm. There cannot be one without the other. Thus, the intent to molest is, by itself, the same as the intent to harm." *Id.* at 1021, 278 Cal.Rptr. at 70, 804 P.2d at 695.

We conclude, in the unique circumstance where the insured has pled guilty to the sexual molestation of a minor, that the intent to molest and the intent to harm cannot be divorced from one another, with the result that the intent to harm may be inferred from the commission of the crime.

This offense presents a situation which is radically distinct from the concerns addressed by the *Swanson* court. The baseball intentionally thrown which accidentally breaks the window, the intentional lane change which forces another driver into a ditch, or the intentionally started trash fire which spreads to an adjacent lot, are occasions where the intentional act is readily separable from the resulting harm, which may or may not be intentional. See *Swanson*, 58 Ohio St.3d at 193, 569 N.E.2d at 910–911. The sexual molestation of a minor, in stark contrast, is an occurrence where the act and harm are virtually inseparable. See *Worcester*, 408 Mass. at 400, 558 N.E.2d at 964–965. If the harm is not intentional in the sense of being purposeful, it must, at the very least, be expected as "substantially certain" to result. See *Swanson*, 58 Ohio St.3d at 193, 569 N.E.2d at 910–911, quoting *Quincy Mutual*, 393 Mass. at 84, 469 N.E.2d at 799, and *Swanson*, 58 Ohio St.3d at 194, 569 N.E.2d at 911, ruling that the trial court's finding that the injury "was not intentionally inflicted or substantially certain to occur is supported by competent, credible evidence"; *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 66–67, 31 OBR 180, 181, 509 N.E.2d 74, 75, defining an "intentional tort" as the commission of an act with "(1) the *intent* to injure another or (2) the belief that such injury is substantially certain to occur * * *." (Emphasis *sic.*)

Pursuant to the foregoing analysis, we follow the result reached by the Eighth District in *Motorists Mut. Ins. Co. v. Martin, supra,* wherein the insured, like Roberts, pled guilty to gross sexual imposition (R.C. 2907.05) of a minor victim. Cf. *Nationwide Mut. Ins. Co. v. Machniak* (1991), 74 Ohio App.3d 638, 600 N.E.2d 266. The *Swanson* opinion, and its reliance upon the majority position in the country, supports this conclusion under the instant facts.

Accordingly, we hold that the trial court properly granted appellee's motion for summary judgment, and appellant's first assignment is without merit. Therefore,

appellant's second assignment of error contesting the trial court's order overruling the motions for summary judgment filed by Roberts and Farley is also without merit.

Thus, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., concurs.

CHRISTLEY, J., concurs separately.

CHRISTLEY, Judge, concurring.

I concur with the majority's opinion and judgment with the following additional comments. First, we did not overlook one of appellants' primary points that the crime pled to did not specify the involvement of a minor, retarded or otherwise. That information was gleaned from other parts of the record incorporated into the summary judgment exercise. I believe our point is that regardless of whether the issue was formalized or not in the charge, the fact was uncontroverted that an adolescent boy, who was minimally "slow" even by appellant's standards, was the victim.

Further, the majority's conclusion that the act and the harm are virtually inseparable in the sexual molestation of a minor, in my opinion, need not be limited to minors. While such activity involving minors is particularly distressing and obnoxious because of their vulnerability due to age, surely the other reasons which have been given to support the inference of intent to harm are equally applicable to unwilling adults as well.

Hopefully we have progressed beyond the point, in cases involving coerced sexual activity, where there must be battering and bruising in order to demonstrate "real" harm when an adult is involved. Any plea to a sex crime involving a victim should be presumptive that an intent to harm can be inferred regardless of age. Thus, I would be in favor of expanding the majority's opinion in that manner.