WESTERN STATES INSURANCE COMPANY, Plaintiff-Appellant, v. WALLACE BOBO, Defendant (J.R. *et al.*, Defendants-Appellees).

Fifth District   No. 5—93—0191

Opinion filed December 29, 1994.—Rehearing denied January 25, 1995.

Rooks, Pitts & Poust, of Chicago (Ian M. Sherman and Julie L. Keller, of counsel), for appellant.

Gene A. Turk, Jr., of Womick & Associates, Chartered, of Carbondale, for appellees.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Western States Insurance Company (Western), appeals from an order of the circuit court of Pulaski County denying summary judgment on its complaint for declaratory judgment. Western had sought a declaration that it was not obligated to provide coverage to or furnish a defense for its insured, defendant Wallace Bobo (Bobo), in a tort action alleging sexual abuse against Bobo. Western appeals from the trial court's order. We reverse.

Defendants, J.R. and S.M., as mother and next friend of L.G., a minor child, filed a complaint against Bobo in the circuit court of Pulaski County alleging that while J.R. and L.G. were minors Bobo sexually assaulted them by: (1) wrongfully touching their buttocks; (2) wrongfully touching their breasts; (3) wrongfully touching them "in and about" their vaginal areas; and (4) forcibly kissing them. Bobo tendered the defense of the case to Western, which had issued Bobo a homeowner's insurance policy. This policy contains the following intentional-acts exclusion:

"1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

a. which is expected or intended by the insured, but this exclusion does not apply to any act committed by or at the direction of the insured not intended to cause serious bodily injury or property damage."

On August 11, 1992, Western filed an amended complaint for declaratory judgment seeking a finding that its homeowner's policy with Bobo did not provide coverage for the matters alleged in the suit filed against Bobo by J.R. and L.G. and for a further finding that Western was not obligated to furnish a defense to Bobo. On August 21, 1992, J.R. and L.G. filed their answer. On August 25, 1992, Western filed a motion for summary judgment and a memorandum in support of summary judgment based on the intentional-acts-exclusion provision. On September 24, 1992, J.R. and L.G. filed their response to Western's motion for summary judgment. In their response, J.R. and L.G. contended that a genuine issue of material fact existed as to whether Bobo intended to cause serious bodily injury to J.R. and L.G. On October 7, 1992, Western filed a reply memorandum in support of its motion for summary judgment. On October 14, 1992, J.R. and L.G. filed a response to Western's reply memorandum.

On February 18, 1993, a hearing on Western's motion for summary judgment was held. Following argument, the trial court denied Western's motion. In its order of March 8, 1993, the trial court held that a "genuine issue of material fact exists as to the question of whether [Bobo] intended to cause serious bodily injury when he allegedly [sexually abused J.R. and L.G.]." The trial court also certified this question of law to the appellate court:

> "Whether under a homeowner's insurance policy excluding coverage for bodily injury for intentional acts with the language:
>
> > 'which is expected or intended by the insured, but this exclusion does not apply to any act committed by the *** insured not intended to cause serious bodily injury ***'
>
> an intent to cause serious bodily injury should be inferred to the insured as a matter of law and public policy where it is alleged that the insured committed a battery against a minor by 'sexual abuse,' regardless of the insured's subjective intent."

On March 22, 1993, Western filed an application for leave to appeal to this court. On May 6, 1993, this court denied the application for leave to appeal. On October 6, 1993, the supreme court of Illinois entered a supervisory order remanding this case back to us with directions to vacate our order of May 6, 1993, denying the application for leave to appeal pursuant to Supreme Court Rule 308 and to enter an order allowing the appeal.

On appeal, Western contends that: (1) the trial court improperly found that an issue of material fact existed as to whether insurance coverage existed for alleged sexual abuse of minors under the intentional-acts exclusion of its homeowner's insurance policy; (2) the trial court improperly refused to infer an intention to cause serious bodily injury; and (3) as a matter of public policy individuals must not be able to obtain insurance to cover damages for sexual abuse to minors. Our resolution of the first two issues makes it unnecessary for us to address the third issue. We therefore reverse the order denying summary judgment.

Because this case involves the interpretation of an insurance contract, standard rules of contract construction are applicable. First, the interpretation of an insurance policy is a question of law, which this court may examine independently of the trial court's finding. (*Mank v. West American Insurance Co.* (1993), 249 Ill. App. 3d 827, 830, 620 N.E.2d 6, 8.) Second, unambiguous policies must be enforced as written. (*Mank*, 249 Ill. App. 3d at 830, 620 N.E.2d at 8.) Third, where an insurance policy contains ambiguous terms or language, it should be construed against the insurer and in favor of the insured. (*Murphy v. State Farm Mutual Automobile Insurance Co.* (1992), 234

Ill. App. 3d 222, 225, 599 N.E.2d 446, 448-49.) However, this general rule favoring the insured "must yield to the paramount rule of reasonable construction which guides all contract interpretations." (*Travelers Insurance Cos. v. P.C. Quote, Inc.* (1991), 211 Ill. App. 3d 719, 724, 570 N.E.2d 614, 617.) Fourth, although an ambiguity exists where a provision or term in the policy is susceptible of more than one reasonable interpretation (*Mank*, 249 Ill. App. 3d at 830, 620 N.E.2d at 8), a court may neither construe a policy against an insurer when no real ambiguity exists (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 495, 475 N.E.2d 872, 876) nor distort the policy to create an ambiguity. *Gonzalez v. State Farm Mutual Automobile Insurance Co.* (1993), 242 Ill. App. 3d 758, 762, 611 N.E.2d 38, 41; see also *State Farm Mutual Automobile Insurance Co. v. Byrne* (1987), 156 Ill. App. 3d 1098, 1100, 510 N.E.2d 131, 133 (rule requiring construction of ambiguous language in favor of insured "does not authorize the perversion of language or an exercise of inventive powers for the purpose of creating an ambiguity where none exists").

■ With the foregoing principles of insurance contract law in mind, we turn to address the precise issue before this court: whether an intent to cause serious bodily injury should be inferred as a matter of law in cases where it is alleged that the insured sexually abused a minor. The practical effect of such a rule is that an insurer will have no duty to defend or provide coverage to the insured. Bobo devotes his brief to reciting basic rules of insurance law and suggesting a definition for the word "serious" in the phrase "serious bodily injury" in an attempt to "give some meaning to the [word] serious." Bobo contends that the phrase "serious bodily injury" (as opposed to the standard "bodily injury" phrase usually contained in intentional-acts-exclusion provisions) renders "the exclusions clause [in the instant case] ambiguous." We reject the over-inflated importance that Bobo attaches to the word "serious." Instead, we agree with Western that the word "serious" must not be determinative of whether a defense (or coverage) for sexual abuse offenders should be provided.

■ Courts have identified three approaches to the question of whether the insured intended to cause injury and thus whether the intentional-acts exclusion applies in cases involving sexual abuse to minors. (See *Horace Mann Insurance Co. v. Fore* (M.D. Ala. 1992), 785 F. Supp. 947, 952; *Allstate Insurance Co. v. Roelfs* (D. Alaska 1987), 698 F. Supp. 815, 820.) The first approach, and the one taken by the overwhelming majority of courts that have considered the issue, is the inferred-intent approach, by which intent to harm is inferred as a matter of law from the nature of the act of sexual abuse regardless of the standards that govern other types of cases. See, *e.g.*, *Westfield*

*Insurance Co. v. Roberts* (1993), 88 Ohio App. 3d 532, 624 N.E.2d 343; *State Farm Fire & Casualty Co. v. Davis* (Ala. 1993), 612 So. 2d 458; *American Family Mutual Insurance Co. v. Purdy* (S.D. 1992), 483 N.W.2d 197; *Wiseman v. Leming* (Ind. Ct. App. 1991), 574 N.E.2d 327; *Scudder v. Hanover Insurance Co.* (1990), 201 Ill. App. 3d 921, 559 N.E.2d 559; *Worcester Insurance Co. v. Fells Acres Day School, Inc.* (1990), 408 Mass. 393, 558 N.E.2d 958; see also *Davis*, 612 So. 2d at 463-64 nn.4-5 (citing additional cases adopting the majority inferred-intent approach); *Purdy*, 483 N.W.2d at 199 n.3 (same).

The second approach, which appears to currently command no support in cases involving child sexual abuse, seeks the insured's actual, subjective intent to cause injury. (See *State Auto Mutual Insurance Co. v. McIntyre* (N.D. Ala. 1987), 652 F. Supp. 1177; but see *Davis*, 612 So. 2d at 461-62 (repudiating and rejecting *McIntyre*'s embrace of the subjective-intent test as an erroneous interpretation/prediction of Alabama law); *Fore*, 785 F. Supp. at 949-54 (same).) The third approach is the objective reasonable person standard, which inquires whether a reasonable person would have foreseen that his action would cause harm. See *CNA Insurance Co. v. McGinnis* (1984), 282 Ark. 90, 666 S.W.2d 689.

■ As previously noted, Illinois follows the majority inferred-intent approach. The general rule in Illinois in nonsexual-abuse cases is that "policy provisions excluding coverage for acts committed by the insured with intent to cause personal injury will only exclude coverage if the insured acted with specific intent to injure, unless the policy states otherwise." (*Scudder*, 201 Ill. App. 3d at 927, 559 N.E.2d at 562.) In other words, an intent to harm is generally a prerequisite to the application of an intentional-injury-exclusion provision. However, a narrow exception to this general rule has been carved out for cases involving child sexual abuse, and most jurisdictions, including Illinois, "which ordinarily apply [the] subjective standard[,] have nevertheless disregarded the insured's denial of a specific intent to injure and inferred an intent to injure or harm as a matter of law in sexual misconduct cases." *Fire Insurance Exchange v. Abbott* (1988), 204 Cal. App. 3d 1012, 1026, 251 Cal. Rptr. 620, 628; see *Scudder*, 201 Ill. App. 3d at 927, 559 N.E.2d at 562.

In *Scudder v. Hanover Insurance Co.* (1990), 201 Ill. App. 3d 921, 559 N.E.2d 559, a case whose facts are nearly identical to those of the instant case, Scudder (the insured), allegedly sexually assaulted four minor boys by fondling their sex organs and causing their hands to come into contact with his penis. At the time of the alleged sexual assaults, Scudder was insured by Hanover Insurance Company and Economy Fire & Casualty. Both policies contained intentional-acts-

exclusion provisions that excluded coverage for bodily injury "which is expected or intended by the insured." (*Scudder*, 201 Ill. App. 3d at 924, 559 N.E.2d at 560.) When Hanover and Economy decided to no longer pay for Scudder's defense on the basis that their policies did not cover injuries allegedly resulting from sexual abuse, Scudder sought a declaratory judgment. The trial court entered summary judgment in favor of Hanover and Economy. (*Scudder*, 201 Ill. App. 3d at 924-25, 559 N.E.2d at 561.) Scudder appealed and the appellate court affirmed.

On appeal, Scudder maintained that an issue of fact existed as to whether he subjectively intended to harm the four adolescent boys that he sexually molested. Relying on *West American Insurance Co. v. Vago* (1990), 197 Ill. App. 3d 131, 553 N.E.2d 1181, the appellate court stated:

> "The underlying complaint in this case alleges that Scudder deliberately sexually assaulted four minor boys. Since the alleged victims were minors, the potential for emotional harm was even greater than in *Vago*, and Scudder should have reasonably anticipated [that] such harm would result from his actions." (*Scudder*, 201 Ill. App. 3d at 926, 559 N.E.2d at 562.)

The *Scudder* court held that the exclusionary provisions were applicable and that neither policy provided coverage with respect to Scudder's alleged sexual assaults. (*Scudder*, 201 Ill. App. 3d at 926, 559 N.E.2d at 562.) As the court in *Scudder* noted, the vast majority of jurisdictions which have considered cases involving the applicability of intentional-act exclusions to situations of sexual abuse "have determined that it will be inferred as a matter of law from such conduct that the insured intended to injure the victim or victims and have denied coverage." (*Scudder*, 201 Ill. App. 3d at 927, 559 N.E.2d at 562-63.) The court concluded by stating:

> "We agree with the majority view that such an inference should be made as a matter of law. Courts which have recognized such an inference have done so in large part *because of the inevitability of injury in sexual abuse cases, especially when the victims are minors.* [Citations.] Such an inference is also consistent with this court's recent conclusion that emotional harm is *practically certain to result from sexual assaults.* [Citation.] Although Scudder's sexual contacts with the minors in this case did not involve penetration and apparently did not involve the use of force, courts have not hesitated to apply the above inference in cases involving 'nonviolent' sexual abuse. [Citations.] In our view, these cases properly recognize the inevitability of emotional harm to minors from sexual abuse in all forms even if the abuse was not accomplished through violence or threats of violence." (Emphasis added.) *Scudder*, 201 Ill. App. 3d at 928-29, 559 N.E.2d at 563.

The only court to construe an intentional-acts-exclusion provision almost identical to the one in Western's policy is the supreme court of Washington. In *Rodriguez v. Williams* (1986), 107 Wash. 2d 381, 729 P.2d 627, a 15-year-old incest victim (Rodriguez) filed suit against her incestuous stepfather (Williams) seeking recovery of damages from the stepfather's homeowner's insurance policy. This policy covered damages because of personal injury but excluded damages for personal injury "which [are] expected or intended by the insured, but this exclusion does not apply to any act committed by or at the direction of the insured not intended to cause serious bodily injury." (*Rodriguez*, 107 Wash. 2d at 382-83, 729 P.2d at 628.) Rodriguez sought a declaratory judgment that her stepfather's insurance policy provided coverage for damages resulting from the incestuous relationship. Relying on the intentional-acts exclusion, the insurer moved for summary judgment. In response, Williams submitted an affidavit declaring: "at no time did I, in any of my actions expect or intend to cause serious bodily injury *** to [Rodriguez]." (*Rodriguez*, 107 Wash. 2d at 383, 729 P.2d at 628.) The trial court entered summary judgment for the insurer, and the Washington Court of Appeals affirmed. *Rodriguez v. Williams* (1986), 42 Wash. App. 633, 713 P.2d 135.

The supreme court of Washington affirmed, holding that *even if Williams did not intend to harm his stepdaughter*, his actual subjective intent was irrelevant. (*Rodriguez*, 107 Wash. 2d at 384, 729 P.2d at 629.) The *Rodriguez* court concluded by observing that "intent to injure, while normally a subjective determination under the wording of this policy, should be inferred to the insured in sex abuse cases," and that once intent is inferred, "it is unimportant that the scope of the injuries inflicted are greater than or different from the injuries which objectively might be expected." *Rodriguez*, 107 Wash. 2d at 387, 729 P.2d at 630.

Notwithstanding the considerable weight of authorities supporting the inferred-intent approach, J.R. and L.G. nonetheless posit that there "are no grounds for setting forth a blanket rule excluding coverage for *all* alleged improper sexual conduct." Thus, according to J.R. and L.G., whether "specific acts of 'sexual abuse' constitute 'serious bodily injury' is inherently a question of fact." We disagree. This court will not attempt to quantify the harm resulting from sexual abuse by classifying on the one hand some types of sexual abuse as "serious" or "severe" and classifying on the other hand some forms of sexual abuse as "less serious." By inferring an intent to harm as a matter of law, we join those courts that have soundly recognized the harm ensuing from all forms of sexual abuse.

As the court in *Scudder* observed:

"Courts [adopting the inferred-intent approach] have done so in large part *because of the inevitability of injury in sexual abuse cases, especially when the victims are minors.* [Citations.] Such an inference is also consistent with this court's recent conclusion that emotional harm is *practically certain to result from sexual assaults.* [Citation.] Although Scudder's sexual contacts with the minors in this case did not involve penetration and apparently did not involve the use of force, courts have not hesitated to apply the above inference in cases involving 'nonviolent' sexual abuse. [Citations.] In our view, these cases *properly recognize the inevitability of emotional harm to minors from sexual abuse in all forms even if the abuse was not accomplished through violence or threats of violence.*" (Emphasis added.) *Scudder*, 201 Ill. App. 3d at 928-29, 559 N.E.2d at 563.

As another court stated:

"A person who sexually abuses a minor cannot expect his insurer to cover his misconduct and cannot escape personal liability by claiming that he did not intend to cause any harm. In situations such as this, *injury always ensues,* and we conclude that one who manipulates children for his own sexual gratification intends any resulting injuries, as a matter of law." (Emphasis added.) *Foremost Insurance Co. v. Weetman* (W.D. Pa. 1989), 726 F. Supp. 618, 622, *aff'd* (3d Cir. 1990), 904 F.2d 694, 696, 697 (without published opinion).

Yet another court noted:

"Plaintiffs seek to distinguish most of these cases [*i.e.*, cases cited that follow the majority approach] on the ground that they involve violent assaults or penetration. Yet plaintiffs offer no evidence to show that less or non-violent sexual misconduct, if any unwanted physical contact can be called nonviolent, is less substantially certain to cause harm than more violent sexual assaults. Indeed, plaintiffs seek hefty sums of money *** from defendant['s] *** 'nonviolent' sexual attacks [*i.e.*, unwanted hugging and kissing and unwanted rubbing of the breasts and buttocks, but no violence or penetration].

* * *

*** The courts following the majority approach have concluded that *sexual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that.*" (Emphasis added.) *Whitt v. De Leu* (W.D. Wis. 1989), 707 F. Supp. 1011, 1015 n.5, 1016.

■ Lastly, J.R. and L.G. raise the argument that denial of coverage will result in innocent victims going uncompensated. Courts

following the inferred-intent approach "have determined that [the] benefit [of compensating sexual abuse victims with insurance proceeds] is outweighed by the effect of allowing sexual offenders to escape having to compensate minors for the harm that the courts have established is inherent in such offenses." (*Whitt*, 707 F. Supp. at 1016.) Furthermore, economic liability should be placed with the same precision as moral liability is placed—squarely on the shoulders of the abuser. "Any other result subsidizes the episodes of child sexual abuse *** at the ultimate expense of other insureds to whom the added costs of indemnifying child molesters will be passed." (*Fore*, 785 F. Supp. at 956.) While cases involving child sexual abuse naturally tug at the court's sympathies, this court cannot indulge its sympathies where doing so would run counter to the mandates of common sense and the decided weight of authority. In short, the inferred-intent approach comports with the very purpose of an intentional-acts-exclusion provision, which is to "prevent extending to the insured a license to commit wanton and malicious acts." *Farmer's Insurance Exchange v. Sipple* (Minn. 1977), 255 N.W.2d 373, 375.

For the aforementioned reasons, we hereby reverse the order of the circuit court of Pulaski County that denied Western's motion for summary judgment, and we remand this cause with directions to enter summary judgment in favor of Western on its complaint for declaratory judgment.

Reversed and remanded with directions.

CHAPMAN and RARICK, JJ., concur.