**MARYLAND CASUALTY COMPANY, Plaintiff,**

v.

**Joseph HAVEY; John Doe; James Doe; John Smith; John Brown and John Jones, Defendants.**

No. 94–3057.

United States District Court, C.D. Illinois, Springfield Division.

May 22, 1995.

Thomas M. Hamilton, Peter C. Morse, Chicago, IL, Matthew J. Maddox, Springfield, IL, for plaintiff.

Carol Hansen Posegate, Springfield, IL, Douglas A. Forsyth, Clayton, MO, for defendants.

## OPINION

RICHARD MILLS, District Judge:

Declaratory Judgment.

Is the insurance company required to defend here?

No.

### I.  Background

"John Doe," "James Doe," "John Smith," "John Brown," and "John Jones" (Defendants) have filed a Complaint in the Sangamon County Circuit Court against Defendant Joseph Havey (Father Havey), a Catholic Priest, and the Diocese of Springfield (Diocese), along with other members of the Roman Catholic Church.  The Complaint alleges Father Havey sexually abused Defendants during the period between 1978 and 1981.  At the time, Defendants were approximately eleven or twelve years old.

The state court complaint alleges Defendants are from devoutly catholic families and Father Havey was a frequent and honored guest in Defendants' homes.  In 1978 Father Havey began supplying Defendants with pornography, cigarettes, alcohol and marijuana.  Father Havey encouraged Defendants to masturbate with him while viewing the pornography.  Father Havey then began having Defendants perform bizarre masochistic acts to him for his own gratification.

Father Havey and the Diocese submitted Defendants' case to the Plaintiff—Maryland Casualty Company—for defense and, if necessary, indemnification.  Maryland Casualty agreed to defend the Diocese; however, it refused to defend Father Havey.  Maryland Casualty has filed this declaratory judgment action asking the Court for a declaration that under its insurance policies it has no duty to defend Father Havey.  Maryland Casualty

and Father Havey have each filed motions for summary judgment.

## II. Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Unquestionably, in determining whether a genuine issue of material facts exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987). "A scintilla of evidence in support of the non-movant's position is insufficient to successfully oppose summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Brownell v. Figel,* 950 F.2d 1285 (7th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

## III. Analysis

■ The Supreme Court of Illinois has set forth the standard to be used when determining if an insurance company has a duty to defend its insured.

To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. (*Thornton v. Paul* (1978), 74 Ill.2d 132, 23 Ill.Dec. 541, 384 N.E.2d 335.) An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill.2d 388, 65 Ill.Dec. 934, 442 N.E.2d 245.) Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. *Maryland Casualty Co. v. Peppers,* (1976), 64 Ill.2d 187, 355 N.E.2d 24.

*United States Fidelity & Guar. Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 73, 161 Ill.Dec. 280, 284, 578 N.E.2d 926, 930 (1991) (emphasis in original). When making these determinations, the complaint and insurance policy must be construed liberally in favor of the insured. *Id.* Furthermore, any ambiguity in the insurance policy must be construed in favor of the insured. *Id.*

There are two insurance policies at issue in this case. The first policy is a general liability policy, a series of which were in effect between 1978 and 1981.[1] The second policy is titled Business Checkmate Policy. A series of Business Checkmate policies were also in effect between 1978 and 1981.[2] The Business Checkmate policy was basically an umbrella policy.

The general liability policy provides the following coverage.

---

1. The general liability policy always ran for a period of one year. At the end of the year a new policy would be issued to provide coverage for the new year. The terms of the general liability policy remained constant between 1978 and 1981.

2. The Business Checkmate Policies were issued and renewed in the same manner as the general liability policies.

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. *bodily injury* or

Coverage B. *property damage*

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit *against the insured* seeking damages on account of such *bodily injury* or *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements. (emphasis in original).

The policy defines occurrence as follows: *"occurrence"* means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured.* (emphasis in original).

The Business Checkmate Policy provides the following coverage.

COVERAGES. The Company will indemnify the Insured for ultimate net loss in excess of the retained limit which the Insured shall become legally obligated to pay as damages because of

Coverage A. Personal Injury Liability or

Coverage B. Property Damage Liability or

Coverage C. Advertising Offense Liability

to which this policy applies, caused by an occurrence.

Under the policy, occurrence "as respects personal injury, property damage or advertising offense, means an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury, property damage or advertising liability neither expected nor intended from the standpoint of the Insured."

▉ Under the terms of both policies, if Father Havey expected or intended to cause bodily injury to Defendants, his actions are not covered. In sexual abuse cases where the victims are minors, Illinois appellate courts have adopted an inferred-intent rule. *State Farm Fire & Cas. Co. v. Watters,* 268 Ill.App.3d 501, 205 Ill.Dec. 936, 644 N.E.2d 492 (1994); *Western States Ins. v. Bobo,* 268 Ill.App.3d 513, 205 Ill.Dec. 930, 644 N.E.2d 486 (1994); *Scudder v. Hanover Insurance Co.,* 201 Ill.App.3d 921, 147 Ill.Dec. 386, 559 N.E.2d 559 (1990). Under this rule, if a person sexually abuses a minor, the court as a matter of law will find that the abuser intended to injure his or her victims.

Courts which have recognized such an inference have done so in large part because of the inevitability of injury in sexual abuse cases, especially when the victims are minors. Such an inference is also consistent with this court's recent conclusion that emotional harm is practically certain to result from sexual assaults. Although [the defendant's] sexual contacts with the minors in this case did not involve penetration and apparently did not involve the use of force, courts have not hesitated to apply the above inference in cases involving "nonviolent" sexual abuse. In our view, these cases properly recognize the inevitability of emotional harm to minors from sexual abuse in all forms even if the abuse was not accomplished through violence or threats of violence.

*Scudder,* 201 Ill.App.3d at 928–29, 147 Ill. Dec. at 390, 559 N.E.2d at 563 (citations omitted); *See also Watters,* 268 Ill.App.3d at 506–07, 205 Ill.Dec. at 940, 644 N.E.2d at 496; *Bobo,* 268 Ill.App.3d at 516–17, 205 Ill. Dec. at 933, 644 N.E.2d at 489.

The Supreme Court of Illinois has yet to speak on this issue.[3] This Court finds, however, that when faced with this issue the Supreme Court of Illinois will adopt the in-

---

**3.** The Supreme Court of Illinois refused to hear both Watters' and Bobo's cases on appeal. 161 Ill.2d 540, 208 Ill.Dec. 369, 649 N.E.2d 425 (1995); 161 Ill.2d 542, 208 Ill.Dec. 371, 649 N.E.2d 427 (1995).

ferred-intent rule. Accordingly, that rule will be applied in this case.

■ Applying the inferred-intent rule to the case at bar, the Court finds that Plaintiff has no duty to defend Father Havey. Under the inferred-intent rule as a matter of law the Court must find that Father Havey intended to harm Defendants when he engaged in his acts of sexual abuse. Accordingly, Father Havey's intent to cause bodily harm takes his actions outside the coverage of both the general liability policy and the Business Checkmate Policy. Because Father Havey's conduct is not covered by either insurance policy, Plaintiff has no duty to defend.

■ Father Havey, who denies abusing Defendants in any way, argues that if he did in fact abuse Defendants the abuse alleged is so bizarre it raises questions regarding his ability to form the necessary intent to intentionally harm Defendants. Under the inferred-intent rule, however, Father Havey's subjective intent is irrelevant; his intent to harm is found as a matter of law. This point was specifically addressed in *Watters*. In that case, the defendant was mildly retarded. The defendant attempted to argue he did not have the mental capability to form the necessary intent to harm the plaintiffs; therefore, the insurance policy's exclusion for intentional harm did not apply. The appellate court found the defendant's argument unpersuasive stating "[w]hen the insured's specific intent to injure is inferred as a matter of law, evidence of the insured's diminished capacity is irrelevant." *Watters*, 268 Ill.App.3d at 508, 205 Ill.Dec. at 941, 644 N.E.2d at 497.

■ Father Havey also points to allegations made in Count III of the state court complaint which he argues triggers Plaintiff's duty to defend. Count III of the state court complaint is entitled "Clergy Malpractice." The complaint alleges Father Havey

breached his priestly and pastoral duty of care to the Plaintiffs by negligently entering into a spiritual and emotional counseling relations with the plaintiffs, minors and potential victims of Defendant's sexual exploitation with full knowledge of his own exploitive propensities, by continuing the spiritual counseling relationship with the minor Plaintiffs after the first instance of sexual exploitation occurred, by not informing the minor Plaintiffs that they had been sexually exploited, by not seeking the proper counseling and therapy for himself and withdrawing from the spiritual and emotional counseling relationship, and by failing to advise and direct the Plaintiffs that they had been sexually abused and they should seek appropriate therapy and counseling.

According to Father Havey, under the Supreme Court of Illinois' interpretation of the terms expected or intended as used in general liability policies, the claims of negligence just recited trigger Plaintiff's duty to defend.

In *Wilkin*, the Supreme Court of Illinois was called upon to interpret a general liability policy's application in an asbestos lawsuit. The insurer of an asbestos manufacturer was claiming it did not have a duty to defend or indemnify the asbestos manufacturer under its general liability policy in a suit where a building owner was suing the asbestos manufacturer for property damage caused by asbestos fibers. One of several arguments put forth by the insurer was that Wilkin either expected or intended the property damage which occurred. The insurance contract interpreted in Wilkin contained the same definition of occurrence as is contained in the insurance policies in the instant case. The Supreme Court noted that some of the allegations in the underlying complaint charged Wilkin with negligently installing asbestos when it knew or should have known of asbestos' potential for causing health problems. The Supreme Court reasoned the allegations that Wilkin knew or should have known about asbestos' qualities did not equate to allegations that Wilkin intended or expected to contaminate the buildings with asbestos fibers.

Father Havey argues the recited allegations only allege negligence and do not allege any intentional actions; therefore, under *Wilkin* the allegations are potentially within the coverage of Plaintiff's policies. The Court does not find this argument persuasive.

The negligence claims alleged in Count III are based upon the sexual assault of Defen-

dants by Father Havey. These claims "are a transparent attempt to trigger insurance coverage" on the part of Defendants. *Watters,* 268 Ill.App.3d at 510, 205 Ill.Dec. at 942, 644 N.E.2d at 498. The negligent acts alleged in Count III cannot be separated from Father Havey's alleged acts of intentional sexual assault. It is those acts of sexual abuse Defendants are attempting to recover damages for, not any negligent acts on Father Havey's behalf.

The United States Court of Appeals for the Fifth Circuit addressed a similar argument in *Commercial Union Ins. Co. v. Roberts,* 7 F.3d 86 (5th Cir.1993). In *Roberts,* the defendant molested two young girls. The girls' parents filed suit in state court against the defendant alleging he had been negligent in not having his pedophilia treated, for treating young female patients (the defendant was a doctor) knowing his propensity to molest young girls, and for teaching Sunday school to young girls knowing his condition. The defendant submitted the case to his insurance company to defend. The insurance company filed a declaratory judgment action in a federal district court claiming it had no duty to defend. The district court granted summary judgment to the insurance company finding the defendant's acts intentional and therefore excluded from coverage under the insurance policy.

On appeal, the Fifth Circuit affirmed. Initially, the Fifth Circuit noted that the defendant's intent to harm the girls would be inferred as a matter of law. The Fifth Circuit then addressed the claims of negligence asserted by the girls in their state court complaint, summarizing the girls' argument as follows: "[t]he claim is essentially that the doctor's negligence set in motion the events that eventually led to his sexual molestation." *Id.* at 88. The Court rejected this argument stating "[e]ach and every allegation arises out of the alleged acts of sexual molestation. The claims of negligence are not independent causes-in-fact of the injuries. Finding a separate and distinct duty to defend Dr. Roberts would necessarily require proof of the underlying sexual molestation." *Id.*

The same reasoning applies to the case at bar. Father Havey's failure to seek counseling did not cause the Defendants' damages; Father Havey's intentional acts of sexual abuse caused them. Since Father Havey's acts of sexual abuse are not covered by either insurance policy at issue in this case, Plaintiff has no duty to defend.

■ There is one possible way Defendants could recover from Father Havey under their theory that he negligently breached his duties as a priest. In *Corgan v. Muehling,* 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991), the Supreme Court of Illinois held that a patient could maintain a cause of action for negligent infliction of emotional distress against her psychologist by alleging the psychologist breached a duty of professional due care by negligently engaging in sexual intercourse with the plaintiff during her treatment. In such a case, it is the breach of the psychologist's professional duty of care to the plaintiff which provides the basis of recovery, not the act of sexual intercourse. In the case at bar, therefore, Defendants could recover from Father Havey for his breach of professional due care as a priest. The allegations in Counts III and IV of the state court complaint could be read as alleging such a cause of action.

But there is one insurmountable obstacle barring such a claim. The initial determination of whether or not a defendant owes a duty to a plaintiff due to their relationship is for a court to make. If a court determines there is no duty owed by the defendant to the plaintiff, there can be no breach of that duty. This point is relevant to the case at bar because Illinois courts have refused to create a legally recognized duty between clergymen and their congregation. *Dausch v. Rykse,* 52 F.3d 1425 (7th Cir.1994). Without such a duty imposed by law, there can be no claim for negligent infliction of emotional distress or for breach of a fiduciary duty. Counts III and IV, therefore, as a matter of law do not state a claim for which relief can be granted. Accordingly, Plaintiff will never have a duty to indemnify based on Counts III and IV of the complaint. "[T]he duty to defend is broader than the duty to indemnify only when the insurer has the potential obligation to indemnify. But when, as here, the insurer has no potential obligation to indem-

nify it has no duty to defend." *Zurich Ins. Co. v. Raymark Industries,* 118 Ill.2d 23, 52, 112 Ill.Dec. 684, 697, 514 N.E.2d 150, 163 (1987).

### IV. Conclusion

In sum, Father Havey's intentional molestation of Defendants is not covered by the insurance policies at issue here. Furthermore, any *valid* claim of negligence against Father Havey is not recognized under Illinois law. Accordingly, Plaintiff has no duty to defend Father Havey and therefore also no duty to indemnify. *Scudder,* 201 Ill. App.3d at 929, 147 Ill.Dec. at 391, 559 N.E.2d at 564.

*Ergo,* Plaintiff's motion for summary judgment (d/e 8) is ALLOWED. Father Havey's motion for summary judgment (d/e 6) is DENIED. Plaintiff has no duty to either defend or indemnify Father Havey in the state court action filed by Defendants.