QUINCY MUTUAL FIRE INSURANCE COMPANY *vs.* BROOKE
ABERNATHY & others.[1]

Hampden.    May 8, 1984. — October 1, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Insurance,* Homeowner's coverage. *Practice, Civil,* Summary judgment.
*Words,* "Accident," "Expected."

Under a provision in a homeowner's liability policy excluding coverage for
"bodily injury . . . which is either expected or intended from the
standpoint of the Insured," it was held that the term "expected" requires
a showing that the insured knew to a substantial certainty that the bodily
injury would result from his actions. [84-86]
In an action by an insurer seeking a declaration that under a clause in a home-
owner's insurance policy excluding coverage for "bodily injury . . .
which is either expected or intended from the standpoint of the Insured,"
the insurer was not liable for injuries sustained by the driver of an
automobile and her daughter when the son of the insured threw a piece
of "blacktop" at the automobile, the judge erred in granting summary
judgment in favor of the insurer where there was a genuine issue of
material fact as to whether the son had intended the injuries or had
known to a substantial certainty that such injuries would result. [87-88]

CIVIL ACTION commenced in the Superior Court Department
on August 21, 1980.

The case was heard by *Eileen P. Griffin,* J., on a motion
for summary judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*William K. Danaher, Jr.* (*Alfred W. Bettigole* with him) for
the defendants.

*John F. Donahue* for the plaintiff.

---

[1] Ellen Abernathy, Harold W. Hannon, Annette G. Hannon, and James
Hannon. A stipulation of dismissal was entered in the Superior Court against
the defendants Anthony Depergola and Timothy Munley.

LIACOS, J. The defendants appeal from a summary judgment entered in favor of the plaintiff, Quincy Mutual Fire Insurance Company (insurer), by a judge of the Superior Court. The insurer had instituted an action for declaratory relief, seeking a judgment that the injuries sustained by the defendants Brooke and Ellen Abernathy fell within an exclusion clause of a home-owner's policy carried by the defendants Harold and Annette Hannon thereby relieving the insurer of any liability under the policy. The Abernathys and the insurer filed cross motions for judgment on the pleadings or, in the alternative, for summary judgment, on a statement of agreed facts. See Mass. R. Civ. P. 12 (c), 56 (c), 365 Mass. 756, 824 (1974). The judge ruled that there existed no genuine issue of material fact and, as matter of law, the injuries to the Abernathys came within the policy's exclusion clause, as bodily injury which was either "expected or intended from the standpoint of the Insured." Hence, the judge concluded that the insurer was not liable to the defendant insureds. The defendants appealed. The Appeals Court affirmed the judgment. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy,* 17 Mass. App. Ct. 907, 909 (1983). We granted the defendants' application for further appellate review. We vacate the judgment and remand the matter to the Superior Court for further proceedings.

The relevant facts, as presented by the parties' pleadings and the statement of agreed facts, are as follows. On November 10, 1979, at approximately 7 P.M., Ellen Abernathy was driving in her car. Her daughter, Brooke, was a passenger in the rear seat. James Hannon, sixteen years old at the time of the incident, admitted to throwing a large piece of "blacktop" at the car. The rock shattered the window on the driver's side of the car and caused the driver, Ellen Abernathy, to sustain facial cuts. The blacktop travelled to the rear seat where it struck Brooke Abernathy in the forehead. Brooke suffered a fractured skull.

On February 7, 1980, the Springfield Juvenile Court adjudicated James Hannon a delinquent as a result of the charge against him of assault and battery by means of a dangerous weapon. Ellen and Brooke Abernathy have commenced suit

against James Hannon seeking to recover for personal injuries and expenses incurred.

At the time of the incident, James Hannon's parents had a contract of insurance in effect with the insurer. The policy was entitled "Homeowners Policy — Comprehensive Personal Liability." James Hannon is an "insured" under the policy, which defines an insured as any resident "of the named insured's household . . . and any other person under the age of twenty-one in the care of any insured." Under the relevant terms of the policy, the insurer agreed to pay damages for which the insured became personally liable and all reasonable medical expenses "to or for each person who sustains bodily injury to which this insurance applies, caused by an accident, if such bodily injury is caused by the activities of any insured." An exclusion clause of the policy provides that "[t]his policy does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

The Appeals Court correctly noted that "[e]xclusions from [insurance] coverage are to be strictly construed." *Quincy Mut. Fire Ins. Co.* v. *Abernathy, supra* at 908, quoting *Vappi & Co.* v. *Aetna Casualty & Sur. Co.,* 348 Mass. 427, 431 (1965). Also, any ambiguities in insurance contracts are to be resolved against the insurer. See *Vappi & Co.* v. *Aetna Casualty & Sur. Co., supra*; *J. D'Amico, Inc.* v. *Boston,* 345 Mass. 218, 224 (1962).

The insurance policy in issue provides coverage for liability imposed on the insured where a person has sustained bodily injury by "accident." The word "accident" has been held to be a word that should be broadly construed. *Beacon Textiles Corp.* v. *Employers Mut. Liab. Ins. Co.,* 355 Mass. 643, 645 (1969). "In its common signification the word means an unexpected happening without intention or design." *Id.* at 646. To the extent the exclusion clause disclaimed coverage for bodily injuries "*intended* from the standpoint of the Insured," it appears the insurer sought to exclude from coverage, intentional harm resulting from an insured's actions, or phrased another way, an occurrence caused by the insured which is not an "acci-

dent" (emphasis supplied).[2] See *Lane* v. *Worcester Mut. Ins. Co.,* 13 Mass. App. Ct. 923, 923-924 (1982). *Sheehan* v. *Goriansky,* 321 Mass. 200, 204-205 (1947). This court consistently has stated that the resulting injury which ensues from the volitional act of an insured is still an "accident" within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur. See *Sheehan* v. *Goriansky, supra; Sontag* v. *Galer,* 279 Mass. 309, 312-313 (1932). Cf. *Bohaker* v. *Travelers Ins. Co.,* 215 Mass. 32, 33-34 (1913).

Ordinarily, injury recklessly caused has been viewed as being within the ambit of coverage for injuries suffered by "accident." See *Sheehan* v. *Goriansky, supra.* Here, however, there is in the exclusion clause language wherein the insurer disclaims liability for "bodily injury . . . which is . . . expected . . . from the standpoint of the Insured." It is arguable that the insurer intended a different meaning to attach to the word "expected" by virtue of the disjunctive used in the exclusion clause, denying coverage for injuries "either expected *or* intended" (emphasis supplied).

The word "expected" is ambiguous in legal signification. No Massachusetts case has construed directly the meaning of the word "expected" in an insurance policy exclusion clause.[3] Some courts have construed similar clauses involving the word "expected" to mean more than a reasonably foreseeable injury resulting from an intentional act, i.e., from negligence. See *Carter Lake* v. *Aetna Casualty & Sur. Co.,* 604 F.2d 1052, 1058 (8th Cir. 1979); *Continental W. Ins. Co.* v. *Toal,* 309 Minn. 169, 176 (1976). Equating the word "expected" with

[2] Distinguishable from the present factual situation are insurance policies which restrict coverage to injuries which occur solely through external, violent, and accidental means. See *Kramer* v. *New York Life Ins. Co.,* 293 Mass. 440, 444, 446 (1936); *Henderson* v. *Travelers Ins. Co.,* 262 Mass. 522, 526 (1928).

[3] The Appeals Court appears to have equated the definition of "expected" with that of "intended" for purposes of determining whether an incident falls within the exclusion clause. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy,* 17 Mass. App. Ct. at 907; *Lane* v. *Worcester Mut. Ins. Co., supra* at 923-924. But cf. *Terrio* v. *McDonough,* 16 Mass. App. Ct. 163, 169 (1983).

negligent conduct would result in a severe and inequitable curtailment of such insurance coverage since the "foreseeability" of harmful consequences is an essential element in establishing liability for personal injuries. *Id.*

Other courts have interpreted the word "expected" in insurance policy subclauses to mean that the insured knew or should have known that there was a "substantial probability" that certain results would ensue. Such an approach would appear to require proof of at least recklessness. Cf. *Auto-Owners Ins. Co.* v. *Jensen,* 667 F.2d 714, 720 (8th Cir. 1981); *Carter Lake* v. *Aetna Casualty & Sur. Co., supra.* Injuries which are "expected" from the standpoint of the insured have been defined as those injuries which the insured knew were highly likely to occur from his conduct. See *Bituminous Casualty Corp.* v. *Bartlett,* 307 Minn. 72, 77-78 (1976), overruled on other grounds, *Prahm* v. *Rupp Constr. Co.,* 277 N.W.2d 389, 391 (Minn. 1979); *Ohio Casualty Ins. Co.* v. *Terrace Enter., Inc.,* 260 N.W.2d 450, 452-453 (Minn. 1978). Accord *Johnson* v. *AID Ins. Co.,* 287 N.W.2d 663, 665 (Minn. 1980). Cf. *Carter Lake* v. *Aetna Casualty & Sur. Co., supra* at 1059; *Auto-Owners Ins. Co.* v. *Jensen, supra* at 719-720. When an insured acted with the knowledge that particular injuries could result from his behavior, these courts have considered such actions reckless, and the ensuing injuries "expected" by the insured and thus excluded from insurance coverage. See, e.g., *Bituminous Casualty Corp.* v. *Bartlett, supra* at 79-80 (when insured knew his actions posed danger, his conduct was reckless and resulting damages "expected" and not covered by liability insurance); *Johnson* v. *AID Ins. Co., supra* (conscious, faulty workmanship by insured which resulted in damages not an unexpected occurrence covered by liability insurance). Cf. *Ohio Casualty Ins. Co.* v. *Terrace Enter., Inc., supra* (insured took precautions after being warned of harmful consequences of desired action; damages which ensued from insured's negligent conduct thus were not "expected"); *Carter Lake* v. *Aetna Casualty & Sur. Co., supra* (city insured took calculated risk knowing of substantial probability of damages which could and did ensue by their inaction; resulting injuries were expected, therefore not within insurance coverage).

The difficulty that courts have had with the definition of the word "expected" in this context leads us to the conclusion that we should resolve the ambiguity of this language against the insurance company. Cf. *Vappi & Co.* v. *Aetna Casualty & Sur. Co., supra* at 431-432. Our cases have concluded that an injury is nonaccidental only where the result was actually, not constructively, intended, i.e., more than recklessness. *Sheehan* v. *Goriansky, supra* at 204-205. This standard requires a showing that the insured knew to a substantial certainty that the bodily injury would result. Thus, we conclude the word "expected" brings no change to our well-defined concept of "accident." Had the insurer intended a different result, it could have used more appropriate language in the exclusion clause.

After considering the definitions of the terms "intended" and "expected" as they appear in the Hannons' exclusion clause, we cannot conclude that the insurer sustained its burden of proving the absence of a genuine issue of material fact from the pleadings and the statement of agreed facts. See *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 554 (1976); Mass. R. Civ. P. 56 (c). The granting of summary judgment in a case where a party's state of mind or motive constitutes an essential element of the cause of action is disfavored. See *Hahn* v. *Sargent,* 523 F.2d 461, 468 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976); *A. John Cohen Ins. Agency, Inc.* v. *Middlesex Ins. Co.,* 8 Mass. App. Ct. 178, 183 (1979); *Noyes* v. *Quincy Mut. Fire Ins. Co.,* 7 Mass. App. Ct. 723, 725-727 (1979). Cf. *Poller* v. *Columbia Broadcasting Sys.,* 368 U.S. 464, 473 (1962). The issue of a party's intention or knowledge, raised by the pleadings, often cannot be resolved adequately from a consideration of the limited materials which accompany a summary judgment motion. See *Noyes* v. *Quincy Mut. Fire Ins. Co., supra* at 724-725. Frequently, the pleadings, affidavits, and other submitted materials render necessary a further exploration of the significant facts and a decision on these "state of mind" issues by a trier of fact who has heard and evaluated all relevant evidence. See *Hahn, supra*; *Noyes, supra* at 726-727.

It is the function of the judge, in ruling on the summary judgment motion, to look beyond the formal allegations of fact in the pleadings "and to determine whether further exploration of the facts is necessary." *Hahn* v. *Sargent, supra* at 464, citing *Briggs* v. *Kerrigan,* 431 F.2d 967, 968 (1st Cir. 1970). In the present case, the judge considered only the pleadings and a statement of agreed facts, and decided that the insurer had sustained its burden of proving that no triable issue of fact existed.

By denying that James Hannon intentionally sought to injure the Abernathys when he threw the rock at their car, the defendants' answers presented a factual issue concerning Hannon's state of mind when he engaged in this action. The statement of agreed facts presented only the following new and relevant information: the incident occurred at 7 P.M. on November 10, 1979; Ellen and Brooke Abernathy were "riding" in their car at the time; the car was struck by a large piece of blacktop which shattered the windshield on the driver's side and travelled to the rear seat; and James Hannon "admitted to throwing the rock at" the Abernathys' car.

These undisputed facts do not resolve either of the two crucial issues raised by the pleadings: whether Hannon intended, by his volitional act, to cause injury to the Abernathys or whether he knew to a substantial certainty that such injuries would ensue from his actions. From the agreed facts, we know only that James Hannon admitted to performing the physical act of throwing the rock at the car.[4] The statement tells us nothing about sixteen year old Hannon's state of mind at the time. We do not know whether his act was prompted by a desire to injure or merely to frighten the occupants of the car,

---

[4] Hannon's adjudication of delinquency by virtue of committing an assault and battery by means of a dangerous weapon is neither conclusive nor admissible as to whether he knew that his actions would result in serious harm to the occupants of the car. A conviction of assault and battery by means of a dangerous weapon requires proof only that the defendant intentionally and unjustifiably used force, however slight, upon the person of another, by means of an instrumentality capable of causing bodily harm. See *Commonwealth* v. *Appleby,* 380 Mass. 296, 308 (1980); *Salemme* v. *Commonwealth,* 370 Mass. 421, 424 (1976). G. L. c. 265, § 15A.

or whether he threw the rock as part of an adolescent prank. We know nothing about Hannon's mental faculties at the time of the incident.

Furthermore, even if we assume that Hannon was fully aware of the circumstances when he threw the rock, the judge could not infer merely from the undisputed facts that he expected or intended harm to the Abernathys. When the incident occurred, the Abernathys were "riding" in their car, thus it may be assumed that Ellen Abernathy was driving the vehicle. The incident took place at about 7 P.M. in November, and therefore, presumably, in full darkness. However, there is no information on the lighting conditions of the road. Since we also do not know Hannon's proximity to the car when he threw the rock one cannot infer that he saw, at night, a child sitting in the rear seat of the car.

The agreed statement also does not inform us of the relative size of the "large piece of blacktop" which he threw. We cannot conclude, therefore, whether the rock was the approximate size of a softball or whether it was nearer the size of a football or a basketball. Although the rock shattered the driver's side of the windshield, the statement does not tell us whether Hannon aimed at the windshield, at the body of the car, or merely threw the rock in the general direction of the car.

The judge should have concluded that crucial factual issues concerning Hannon's state of mind and the surrounding circumstances remained unresolved and required further exploration, see *Hahn* v. *Sargent, supra* at 464, before a determination could be made as to whether the incident fell within the exclusion clause of the insurance policy. Cf. *Noyes* v. *Quincy Mut. Fire Ins. Co., supra* at 726-727.

We conclude that the judge erred in ruling, as matter of law, that the Abernathys' personal injuries were "either expected or intended from the standpoint of the Insured" and thus excluded from coverage under the Hannons' homeowner's policy. The judgment of the Superior Court is reversed and the case is remanded for further proceedings.

*So ordered.*