Greco, PJ.
Danvers Motor Company, Inc. (“Danvers”) commenced this action against Sean Looney (“Looney”) to recover for damages to a motor vehicle it had rented to Looney for three days in July of 2006. After a jury-waived trial, judgment was entered in favor of Danvers for $16,000.00 in damages, interest, costs, and $2,000.00 in attorney’s fees. Looney filed this appeal, arguing that any property damage to the vehicle was covered by a “Comprehensive and Collision Damage Waiver” he had purchased. He further argued that if the waiver did not apply, the damages and attorney’s fees awarded by the trial judge were inappropriate. Danvers filed a cross appeal on the ground that the damages and fees awarded were legally inadequate.
Under the automobile rental agreement, the renter was responsible “for all damage to ... [ljoss of [ujse, diminished value of the [vjehicle caused by damage to it.” The renter was required to “report all accidents or incidents of theft or vandalism to *4 [Danvers] and the police as soon as [he] discover [ed] them.” The Comprehensive and Collision Damage Waiver[1] purchased by Looney provided, however, that he would not be responsible for the damage unless it was due to his own “intentional, willful or wanton act.”
The evidence presented by Danvers at trial indicated that when Looney returned the vehicle, he admitted to the customer service representative at Danvers that there was new damage to the vehicle caused by a “trunk” attached to the roof. The representative examined the vehicle and noticed “four big dents on the roof ... in each corner.” He then told Looney that Danvers would have the damage appraised and that he would get back to him. The subsequent appraisal, which was done by the body shop manager at Danvers, indicated that the roof would have to be replaced at a cost of $3,331.17. Looney has never paid for that work to be done. Looney, on the other hand, testified that he had placed a canoe, not a trunk, on the roof of the vehicle; that he put padding under the canoe; and that he affixed it to the roof “by ratcheting tie-down strips ... through a loop on the canoe and down and around the bumper” and by hooking them onto the metal frame of the vehicle. He characterized the damage as “scratches,” and maintained that he did not have to pay anything in view of the waiver he had purchased.
The key issue on this appeal is the proper construction of the language of the waiver Looney purchased. Specifically, the dispositive question is whether he would remain liable for the damage simply because he intended to do the act of placing the canoe on the roof (and the trial judge did find that the object was a canoe, not a trunk), or whether he also had to intend, or at least expect, some resulting damage from that act. The trial judge found that the waiver did not provide coverage because the “damage caused to the vehicle’s roof was as a result of an intentional act of the defendant” (emphasis in original). In the context of the evidence summarized above, the trial judge clearly opted for the first interpretation of the waiver. We conclude, however, that such an interpretation is not consistent with Massachusetts law.
In Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81 (1984), the insured had thrown “a large piece of ‘blacktop’” at a car, thereby shattering a window and causing injury to the driver. Id. at 82. The insured’s policy excluded coverage for “bodily injury or property damage which is either expected or intended from the standpoint of the Insured.” Id. at 83. The Supreme Judicial Court stated that this provision excluded coverage for “an occurrence by the insured which is not an ‘accident,’” id., but noted that “the resulting injury which ensues from the volitional act of the insured is still an ‘accident’ within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur.” Id. at 84. Almost five years later, in City of Newton v. Krasnigor, 404 Mass. 682 (1989), the Court dealt with an exclusion similar to the one in Abernathy. The Court stated that for the exclusion to apply in that case, in which the defendant had started a fire in a school, “there must be a showing that [the *5 defendant] intended, or expected, to cause property damage,” even though he did not intend “to cause the exact damage which actually occurred.” Krasnigor, supra at 687.
Any ambiguity in Massachusetts law based on the wording of the relevant waiver appears to have been dispelled in Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93 (1997). There, the insurance policy excluded coverage for “bodily injury ... which results directly or indirectly from ... an intentional act of the insured.” Id at 94. In affirming the decision of the Appeals Court,[2] the Supreme Judicial Court stated that “exclusions from insurance coverage and ambiguities in a policy are to be strictly construed against an insurer.” Id. The Court agreed with the Appeals Court “that the broad interpretation urged by Preferred — to the effect that the exclusion bars any accident resulting from a volitional act of the insured irrespective of the insured’s intent to cause injury — lacks any limiting principle and would logically tend to negate coverage in a substantial number of, if not all, accidents.” Id. The “correct controlling principle,” the Court held, is that “only the intended injuries flowing from an intentional act... are excluded.” Id., quoting 7A J.A. APPLEMAN, INSURANCE LAW AND PRACTICE §4492.02, at 32 (rev. ed. 1979).
In this case, the evidence at trial would not have warranted a finding that Looney intended to damage the roof of the vehicle, or that he should have expected such damage to occur. Indeed, the evidence was to the contrary in that Looney took reasonable precautions to see that such damage did not occur. And it makes sense that he should not be liable. As the Appeals Court noted in Gamache, “reading the phrase ‘intentional act’ as incorporating all volitional acts is so broad that the exclusion would effectively nullify the policy’s coverage for ‘accidents.’” Id. at 198. Since the negligence of the actor does not preclude his act from being considered an accident, Liberty Mutual Ins. Co. v. Tabor, 407 Mass. 354, 358 (1990), in the context of this case, it would certainly be an odd result for Looney to be liable here, but to have been covered if he momentarily failed to pay attention and slammed into the car in front of him causing far more damage than dents in the roof.
Accordingly, the judgment for the plaintiff is vacated. Judgment is to be entered in the trial court for the defendant on the complaint.[3]
So ordered.

 Collision damage was defined in the agreement as damage “caused by collision or upset”; comprehensive damage was defined as damage caused by theft or vandalism by anyone other the renter or his passengers, by “an act of nature, riot or civil disturbance, and fire.”

 Preferred Mut. Ins. Co. v. Gamache, 42 Mass. App. Ct. 194 (1997).

 Given our reversal of the trial court’s judgment, it is unnecessary to address Danvers’ contention on its cross appeal that the damages and attorney’s fees awarded to it were insufficient.