ALLSTATE INSURANCE COMPANY ET AL., APPELLANTS, *v.* CAMPBELL ET AL.,
APPELLEES.

[Cite as *Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312.]

*Insurance policies — Inferred-intent analysis applied to intentional-act exclusions*
*— Inferred intent is not limited to sexual molestation and homicide —*
*Inferred intent applies only when the insured's intentional act and the*
*harm caused are intrinsically tied so that the act has necessarily resulted*
*in the harm.*

(No. 2009-2358 — Submitted September 29, 2010 — Decided
December 30, 2010.)

APPEAL from the Court of Appeals for Franklin County, Nos. 09AP-306,
09AP-307, 09AP-308, 09AP-309, 09AP-318, 09AP-319, 09AP-320,
and 09AP-321, 2009-Ohio-6055.

_____

SYLLABUS OF THE COURT

1. As applied to an insurance policy's intentional-act exclusion, the doctrine of
   inferred intent is not limited to cases of sexual molestation or homicide.

2. As applied to an insurance policy's intentional-act exclusion, the doctrine of
   inferred intent applies only in cases in which the insured's intentional act
   and the harm caused are intrinsically tied so that the act has necessarily
   resulted in the harm.

_____

LANZINGER, J.

{¶ 1} In this appeal arising from a declaratory judgment action to
determine whether insurance coverage exists in a lawsuit involving injuries
stemming from a misguided teenage prank, we are asked to apply the doctrine of

inferred intent with respect to intentional-act exclusions. Because we decline to allow the intent to harm to be inferred as a matter of law in cases in which the harm suffered cannot be deemed an inherent result of the intentional act, we affirm the judgment of the court of appeals in part and remand to the trial court for proceedings consistent with this opinion.

## I. Case Background

{¶ 2} On the evening of November 18, 2005, a group of teenage boys, including Dailyn Campbell, Jesse Howard, and Corey Manns, stole a lightweight Styrofoam target deer typically used for shooting or archery. The boys fastened a piece of wood to the target so that it could stand upright. Along with Carson Barnes, they then placed it just below the crest of a hill in Hardin County on County Road 144, a hilly and curvy two-lane road with a speed limit of 55 miles per hour. They put the target on the road after dark – between 9:00 and 9:30 p.m. – in a place in which drivers would be unable to see it until they were 15 to 30 yards away. The boys then remained in the area so that they could watch the reactions of motorists. About five minutes after the boys placed the target in the road, appellee Robert Roby drove over the hill. Roby took evasive action, but ultimately lost control of his vehicle, which left the road, overturned, and came to rest in a nearby field. This accident caused serious injuries to both Roby and his passenger, appellee Dustin Zachariah.

{¶ 3} Roby and Zachariah[1] filed suits in the Franklin County Court of Common Pleas against the boys, their parents, and their insurance companies, among others, seeking recovery for the damages sustained in the accident.

{¶ 4} Appellants Allstate Insurance Company ("Allstate"), American Southern Insurance Company ("American Southern"), Erie Insurance Exchange ("Erie"), and Grange Mutual Casualty Company ("Grange") filed declaratory

---

1. Zachariah's mother, Katherine E. Piper, is also a plaintiff in Zachariah's suit.

judgment actions in the Franklin County Court of Common Pleas seeking a declaration that they are under no duty to defend or indemnify their insureds, the juveniles and their parents, in the Roby and Zachariah lawsuits.

{¶ 5} After consolidating the declaratory judgment actions, the trial court granted the insurance companies' motions for summary judgment. Although the court did not find that the boys directly intended to cause harm, it inferred their intent as a matter of law, based in part on the finding that their conduct was substantially certain to result in harm. The trial court thus concluded that none of the pertinent insurance policies provided coverage and that none of the insurers had a duty to defend or indemnify its insureds in the pending bodily injury actions.

{¶ 6} The Tenth District Court of Appeals reversed, holding that genuine issues of material fact exist over whether the boys intended to cause harm when they placed the deer target in the road, whether harm was substantially certain to result from their actions, and whether those actions fall within the scope of their individual insurance policies. *Allstate Ins. Co. v. Campbell*, Franklin App. Nos. 09AP-306, 09AP-307, 09AP-308, 09AP-309, 09AP-318, 09AP-319, 09AP-320, and 09AP-321, 2009-Ohio-6055, ¶ 53. The court of appeals expressed uncertainty regarding the strength of inferred intent in Ohio but noted that appellate courts have expanded the doctrine beyond the crimes of murder and molestation. Id. at ¶ 39. The Tenth District Court of Appeals stated that there was no dispute that the boys had acted intentionally; the disputed issue was whether they had intended harm or injury to follow their intentional act. Id. at ¶ 50. The court concluded that because questions of fact remained over the certainty of harm resulting from the boys' actions, their conduct did not support an objective inference of an intent to injure as a matter of law. Id. at ¶ 53.

{¶ 7} We granted discretionary jurisdiction over the second proposition of law of each insurer, as well as the third proposition of law of Allstate and

Grange.[2] *Allstate Ins. Co. v. Campbell*, 124 Ohio St.3d 1506, 2010-Ohio-799, 922 N.E.2d 969. The insurers' second proposition of law states that the doctrine of inferred intent as applied to an intentional-act exclusion in an insurance policy is not limited to cases of sexual molestation or homicide but may be applied where undisputed facts establish that harm was substantially certain to occur as a result of the insured's conduct. Allstate and Grange's third proposition of law states that their policies' exclusionary language denotes an objective as opposed to a subjective standard of coverage, rendering an insured's subjective intent irrelevant.

## II. Legal Analysis

### A. The Language of the Insurance Agreements

{¶ 8} "It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy." *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 36, 665 N.E.2d 1115. "Coverage is provided if the conduct falls within the scope of coverage defined in the policy, and not within an exception thereto." Id.

{¶ 9} Homeowners' insurance policies typically provide coverage for harm accidentally caused by their insureds; intentional torts are excluded. Most policies contain an intentional-act exclusion, which states that the insurance company will not be liable for harm intentionally caused by the insured. But when there is no evidence of direct intent to cause harm and the insured denies the intent to cause any harm, the insured's intent to cause harm will be inferred as a

---

2. We note that while our March 10, 2010 Case Announcements correctly reflected the propositions of law over which we granted jurisdiction, our March 10, 2010 entry in this case contained a clerical error, indicating that we accepted the appeal of American Southern on Proposition of Law I. American Southern has briefed both Proposition of Law I, for which we did not accept jurisdiction, and Proposition of Law II, for which we did. We correct the clerical error by accepting the appeal of American Southern nunc pro tunc only on Proposition of Law II, and we will not address American Southern's Proposition of Law I.

matter of law in certain instances. *Gearing,* 76 Ohio St.3d 34, 665 N.E.2d 1115, paragraph one of the syllabus.

{¶ 10} Although the central question is whether intent to harm should be inferred as a matter of law under the circumstances of this case, insurance coverage is finally determined by the policy language. As a preliminary matter, we recognize that each policy issued by the four insurers contains similar language defining an "occurrence" as an accident and providing coverage for bodily injury arising from an occurrence. Each insurer, however, uses unique exclusionary language.

1. Allstate's exclusionary language for intentional act

{¶ 11} Allstate issued policies to a parent of Dailyn Campbell and the parents of Jesse Howard.[3] The exclusion portion of the Allstate policies provides:

{¶ 12} "**Losses We Do Not Cover** * * * **:**

{¶ 13} "1.    **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:

{¶ 14} "a) such **insured person** lacks the mental capacity to govern his or her conduct;

{¶ 15} "b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

{¶ 16} "c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected." (Boldface sic.)

2. American Southern's exclusionary language for intentional act

---

3. The relevant language of each policy issued by Allstate is identical.

{¶ 17} American Southern also issued a policy to one of Dailyn Campbell's parents. The exclusion portion of the American Southern policy provides:

{¶ 18} "**1. Exclusions That Apply to Coverages L and M –** Liability and Medical Payment Coverage does not apply to 'bodily injury' or 'property damage' which results directly or indirectly from:

{¶ 19} " * * *

{¶ 20} "**j.** an intentional act of any 'insured' or an act done at the direction of any 'insured.' " (Boldface sic.)

3. Erie's exclusionary language for intentional act

{¶ 21} Erie issued policies to a parent of Corey Manns and the parents of Carson Barnes.[4] The exclusion portion of the Erie policies provides:

{¶ 22} "**WHAT WE DO NOT COVER – EXCLUSIONS**

{¶ 23} "* * *

{¶ 24} "**We** do not cover under *Bodily Injury Liability Coverage * * **:

{¶ 25} "1. **Bodily injury**, **property damage** or **personal injury** expected or intended by **anyone we protect** even if:

{¶ 26} "a. the degree, kind or quality of the injury or damage is different than what was expected or intended; or

{¶ 27} "b. a different person, entity, real or personal property sustained the injury or damage than was expected or intended." (Boldface and emphasis sic.)

4. Grange's exclusionary language for intentional act

{¶ 28} Grange issued a policy to a parent of Corey Manns. The Grange policy provides:

{¶ 29} "EXCLUSIONS

---

4. The relevant language of each policy issued by Erie is identical.

**{¶ 30}** "* * *

**{¶ 31}** "6. **Bodily injury or property damage** expected or intended by any **insured person**." (Boldface sic.)

*B. Acceptance of the Doctrine of Inferred Intent*

**{¶ 32}** The appellant insurers argue that we should expand the rule of inferred intent so that it applies to the circumstances in this case. They suggest that we apply the "substantially certain" test so that intent to harm will be inferred as a matter of law whenever an insured's act is substantially certain to cause harm. The appellees argue that application of inferred intent should remain limited and that instead of using the "substantially certain" test in this case, the trial court should resolve the disputed matter of the boys' intent like any other issue of fact.

**{¶ 33}** Before we discuss whether the rule of inferred intent should be extended to all torts where there is a substantial certainty of harm or limit its application, we must explore the line of cases that have accepted the doctrine.

**{¶ 34}** We have already recognized that the rule of inferred intent applies in two specific instances: sexual molestation of a minor and murder. See *Gearing*, 76 Ohio St.3d at 36-38, 665 N.E.2d 1115; *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 114-115, 30 OBR 424, 507 N.E. 2d 1118. Appellants ask us to extend the doctrine to apply in cases like the one currently before us, specifically relying upon the analysis set forth in Justice Cook's concurring opinion in *Buckeye Union Ins. Co. v. New England Ins. Co.* (1999), 87 Ohio St.3d 280, 288-289, 720 N.E.2d 495. In her concurrence, Justice Cook argued that where direct intent does not exist, the insured's subjective intent is not conclusive on the coverage issue, and courts should instead infer an intent to harm where the insured's action creates a substantial certainty of harm. Id.

**{¶ 35}** We acknowledge that the lack of a majority opinion in *Buckeye Union* has generated uncertainty as to the scope of the doctrine of inferred intent.

On one hand, the appellees argue that Justice Pfeifer's plurality opinion in *Buckeye Union* – which limits the doctrine to acts that are "intentionally injurious by definition," id. at 284, represents the correct view of the doctrine in Ohio. On the other hand, the appellants argue that inferred intent should be applied in a wider variety of cases, as the *Buckeye Union* concurring opinion suggests. Recognizing the need for clarity in this area of the law, we first review our decisions relevant to the doctrine.

### 1. *Preferred Risk Ins. Co. v. Gill*

**{¶ 36}** The roots of the doctrine of inferred intent in Ohio can be traced back to *Gill,* 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. In *Gill*, we considered whether an insurance company had a duty to defend or indemnify against claims of wrongful death and negligent infliction of emotional distress an insured who had been convicted of aggravated murder of a child. The insurance policy included language excluding coverage for "bodily injury or property damage 'which is expected or intended by the insured.' " Id. at 113. We held that the insurance company had no duty to defend or indemnify in the underlying wrongful-death claim because the insured's act "was indisputably intentional and outside coverage." Id. at 115. We also concluded that the insurance company had no duty to defend or indemnify in the underlying claim for emotional distress, noting that the behavior of the insured leading to the emotional distress "had its origin in a clearly intentional course of conduct (*i.e.*, the murder) and is so inextricably entwined in time and purpose with the intentional acts leading to the murder, and the murder itself, that it cannot fairly be said to be within coverage." Id.

### 2. *Physicians Ins. Co. of Ohio v. Swanson*

**{¶ 37}** We revisited *Gill* in *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906. *Swanson* considered whether the insurance companies had an obligation to defend and indemnify its insureds,

whose son had fired a BB gun towards some teenagers from approximately 70 to 100 feet. The Swansons' insurance policy said that it "will not cover Personal Injury or Property Damage caused intentionally." Id. at 191. In explaining our decision in *Gill*, we noted, "*Gill* actually stands for the proposition that it is the resultant *injury* which must be intended for the exclusion to apply to deny coverage." (Emphasis sic.) Id.

{¶ 38} In reversing the holding of the court of appeals that the insurers were not obligated to defend and indemnify its insureds, we held, "In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended." Id. at syllabus. This holding was based upon two rationales. First, we determined that the plain language of the policy was in terms of an intentional or expected injury, not an intentional or expected act. Id. at 193. Second, we recognized that many unintended injuries result from intentional acts. Id.

3. *Gearing v. Nationwide Ins. Co.*

{¶ 39} While *Gill* and *Swanson* can be read as implicitly adopting a form of inferred intent, we first explicitly recognized the doctrine in *Gearing*, 76 Ohio St.3d 34, 665 N.E.2d 1115, paragraph one of the syllabus. *Gearing* involved a declaratory judgment action in which an insured sought a declaration that the insurance company was obligated to defend him in a civil suit arising from his alleged sexual molestation of three girls. Id. at 34-35. We affirmed the judgment of the court of appeals, holding that the insurance company owed no duty to defend the insured. Id. at 41.

{¶ 40} In *Gearing*, the insurance policy had provided an exclusion for bodily injury or property damage that is "expected or intended by the insured." Id. at 36. We examined cases from other states in which the doctrine of inferred intent was applied to cases arising from acts of sexual molestation, concluding that "in those cases where an intentional act is substantially certain to cause

injury, determination of an insured's subjective intent, or lack of subjective intent, is not conclusive of the issue of coverage." Id. at 39. Thus, "an insured's protestations that he 'didn't mean to hurt anyone' are only relevant where the intentional act at issue is not substantially certain to result in injury." Id.

**{¶ 41}** We noted that this conclusion is central to *Swanson*, where we stated, " ' "[R]esulting injury which ensues from the volitional act of an insured is still an 'accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm *or is not substantially certain that such harm will occur*." ' " (Emphasis added in *Gearing*.) Id. at 39-40, quoting *Swanson*, 58 Ohio St.3d at 193, 569 N.E.2d 906, quoting *Quincy Mut. Fire Ins. Co. v. Abernathy* (1984), 393 Mass. 81, 84, 469 N.E.2d 797.

**{¶ 42}** After determining that the arguments in support of inferred intent were persuasive and that the rule was consistent with earlier decisions, we adopted it: "We accept the premises upon which the inferred intent rule is based, and hold that intent to harm is properly inferred as a matter of law from deliberate acts of sexual molestation of a minor." *Gearing*, 76 Ohio St.3d at 37, 665 N.E.2d 1115. In applying this holding, we concluded, "Incidents of intentional acts of sexual molestation of a minor do not constitute 'occurrences' for purposes of determining liability insurance coverage, as intent to harm inconsistent with an insurable incident is properly inferred as a matter of law from deliberate acts of sexual molestation of a minor." Id. at paragraph one of the syllabus.

**{¶ 43}** Our decision in *Gearing* nevertheless left certain issues unresolved. In adopting the doctrine of inferred intent only in the context of sexual-molestation cases, we did not address the question of whether intent may be inferred in cases involving acts other than sexual molestation or murder. Furthermore, as a result of this limited adoption of the rule, we did not enunciate a clear standard for courts to apply in determining whether a certain act gives rise to an inference of intent.

4. *Buckeye Union Ins. Co. v. New England Ins. Co.*

{¶ 44} The application of the doctrine of inferred intent to cases beyond those involving murder and sexual molestation first arose in *Buckeye Union Ins. Co.,* 87 Ohio St.3d at 288-289, 720 N.E.2d 495 (Cook, J. concurring). A federal district court had ruled in an underlying case that Buckeye Union Insurance Company had acted in bad faith and with intent to injure in refusing to settle an insurance claim and that this intentional act precluded New England Insurance Company from reimbursing its insured, Buckeye Union, under a professional liability policy. Id. at 281-282. The Sixth Circuit Court of Appeals certified three questions to this court, the first of which asked whether Buckeye Union's actions in the underlying case constituted the type of intentional tort that is uninsurable under Ohio law. Id. at 282. We answered that question "no." Id.

{¶ 45} In a plurality opinion, Justice Pfeifer made a distinction. He noted that in both *Gill* and *Gearing*, "insureds were found to have committed wrongful acts, acts that are intentionally injurious by definition." Id. at 284. Buckeye Union's act of refusing to settle an insurance claim was not such an intentionally injurious act, Justice Pfeifer explained, because in certain circumstances, insurers may properly refuse to settle claims. Id. He accordingly concluded that it would be improper to extend the doctrine of inferred intent to torts that were based upon a bad-faith refusal to settle an insurance claim.

{¶ 46} Disagreeing with Justice Pfeifer's reasoning, Justice Cook argued that *Gearing*, 76 Ohio St.3d 34, 665 N.E.2d 1115, provided an effective means for analyzing coverage issues regarding a wide variety of intentional torts. Id. at 289-290 (Cook, J., concurring). Justice Cook criticized limiting "acts that are intentionally injurious by definition" to murder and sexual molestation, arguing that this categorization does not clarify what other types of actions might reveal intent. Id. at 289-290. She concluded that the proper test would be the objective "substantial certainty" test set forth in *Gearing*. Id. at 290-291. A close

examination of *Gearing,* however, reveals that this court has limited the scope of inferred intent.

### C. Application of the Doctrine of Inferred Intent

{¶ 47} In *Gearing*, we noted that the rule of inferred intent "is based on the premise that acts of sexual molestation and the fact of injury caused thereby are 'virtually inseparable.' " *Gearing*, 76 Ohio St.3d at 37, 665 N.E.2d 1115, quoting *Worcester Ins. Co. v. Fells Acres Day School, Inc.* (1990), 408 Mass. 393, 400, 558 N.E.2d 958. In other words, in a case of sexual molestation, " 'to do the act is necessarily to do the harm which is its consequence; and * * * since unquestionably the act is intended, so also is the harm.' " (Ellipsis sic.) *Id.,* quoting *Allstate Ins. Co. v. Mugavero* (1992), 79 N.Y.2d 153, 160, 581 N.Y.S.2d 142, 589 N.E.2d 365.

{¶ 48} It is clear that as applied to an insurance policy's intentional-act exclusion, the doctrine of inferred intent applies only in cases in which the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm. Limiting the scope of the doctrine is appropriate because the rule is needed only in a narrow range of cases – those in which the insured's testimony on harmful intent is irrelevant because the intentional act could not have been done without causing harm. Thus, an insured's intent to cause injury or damage may be inferred only when that harm is intrinsically tied to the act of the insured – i.e., the action necessitates the harm. The doctrine of inferred intent does not apply only to cases arising from acts of murder or sexual molestation. For example, intent could hypothetically be inferred in certain felonious-assault or rape cases, where the intentional acts necessarily cause harm; however, courts should be careful to avoid applying the doctrine in cases where the insured's intentional act will not necessarily result in the harm caused by that act.

**{¶ 49}** *Gill* and *Gearing* provide clear examples of cases in which the doctrine applies. In *Gill*, harm was inherent in the defendant's act of murder. Harm was similarly inherent in the acts of sexual molestation in *Gearing*. In each of these cases, the insured could not claim that he was unaware that harm would result from his actions. The doctrine of inferred intent thus applied in those cases, and the insureds' actions were excluded from coverage.

**{¶ 50}** The same cannot be said about the actions in *Swanson* and *Buckeye Union*. In *Swanson*, the act of firing a BB gun from a relatively long distance would not necessarily result in harm. Likewise, an insurance company's bad-faith refusal to settle a claim, as in *Buckeye Union*, does not necessarily result in compensable damages. In both cases, a factual inquiry was necessary to determine whether the insureds' actions were excluded from coverage.

**{¶ 51}** The present case is similar to *Swanson* and *Buckeye Union*. We cannot say as a matter of law that the act of placing a target deer in a road in the manner done here necessarily results in harm. Indeed, other cars had passed by and avoided the target. While the boys' act was ill-conceived and irresponsible and resulted in serious injuries, the action and the harm are not intrinsically tied the way they are in murder and sexual molestation. We accordingly conclude that while the doctrine of inferred intent may apply to actions other than murder or sexual molestation, it does not apply in this case.

### D. The "Substantially Certain" Test

**{¶ 52}** Appellants have asked us to use the "substantially certain" test – which Justice Cook advocated in *Buckeye Union* and which was discussed in *Swanson* and *Gearing* – when deciding whether the intentional-act exclusion applies to cases other than murder or sexual assault. Before adopting the rule of inferred intent for Ohio, we had quoted from the Supreme Judicial Court of Massachusetts, which characterizes an act that is not expected or intended by the insured: " 'the resulting injury which ensues from the volitional act of an insured

is still an "accident" within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur.' " *Swanson*, 58 Ohio St.3d at 193, 569 N.E.2d 906, quoting *Quincy,* 393 Mass. at 84, 469 N.E.2d 797. In *Swanson*, we held that the insurer must demonstrate that "the injury itself was expected or intended." Id. at 193.

{¶ 53} We also quoted *Swanson*'s "substantially certain" language when explaining how adoption of the doctrine of inferred intent was consistent with precedent. *Gearing*, 76 Ohio St.3d at 39-40, 665 N.E.2d 1115. "[I]n those cases where an intentional act is substantially certain to cause injury, determination of an insured's subjective intent, or lack of subjective intent, is not conclusive of the issue of coverage. Rather, an insured's protestations that he 'didn't mean to hurt anyone' are only relevant where the intentional act at issue is not substantially certain to result in injury." Id. at 39. Significantly, nowhere does *Gearing* state that the "substantially certain" test should be used to determine whether to infer intent as a matter of law in considering other intentional torts.

{¶ 54} Justice Cook argued that *Gearing* outlined a two-part analysis. *Buckeye Union*, 87 Ohio St.3d at 289, 720 N.E.2d 495 (Cook, J., concurring). First is a determination whether the insured directly intended the injury. Id. at 288. If no direct intention exists, then the court determines whether the insured's act was substantially certain to cause injury. Id. That approach is flawed, however.

{¶ 55} Instead of outlining a two-part analysis, *Gearing* treats the "substantially certain" test as being subsumed within the newly adopted rule of inferred intent.[5] *Gearing* never addressed whether the insured's action was

---

5. Appellants argue that we adopted Justice Cook's *Buckeye Union* opinion in *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199. *Penn Traffic*, however, is inapposite here, as it concerned employer liability for intentional torts, an entirely separate area of

14

substantially certain to result in harm. Instead, it concluded that "*intent to harm* inconsistent with an insurable incident *is properly inferred* as a matter of law from deliberate acts of sexual molestation of a minor." (Emphasis added.) *Gearing*, 76 Ohio St.3d at 40, 665 N.E.2d 1115.

{¶ 56} We now clarify that the doctrine of inferred intent applies only in cases in which the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm. Because this test provides a clearer method for determining when intent to harm should be inferred as a matter of law, we hold that courts are to examine whether the act has necessarily resulted in the harm – rather than whether the act is substantially certain to result in harm.

*E. Objective or Subjective Nature of Inferred Intent*

{¶ 57} In their second propositions of law, Allstate and Grange argue that the exclusionary language used in their policies requires an objective test for whether they must provide coverage. Because we determine that under the circumstances of this case, intent to harm may not be inferred as a matter of law, we affirm the judgment of the court of appeals on this point and conclude that the trial court must conduct a factual inquiry on remand to determine whether a duty to defend and indemnify arises from the Allstate, Grange, and Erie policies.

{¶ 58} The Allstate, Grange, and Erie polices each contain exclusionary language stating that the insurers will not cover harm expected or intended by an insured.[6] Because we do not infer the insureds' intent to harm as a matter of law

---

the law that has undergone significant change since that opinion was issued. See *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066.

6. Allstate argues its policy's language precluding damage that "may *reasonably* be expected to result from the intentional * * * acts" of "any insured person" differentiates its policy from the others in a manner that triggers an objective test. (Emphasis sic.) We conclude that as interpreted in light of *Swanson* and *Gearing*, Allstate's inclusion of the word "reasonably" into its exclusionary language does not alter our analysis here, because the issue of whether the harm was intended or could reasonably be expected to result from the an intentional act is a question of fact.

and the boys deny that harm was intended or expected, whether the injury was expected or reasonably expected is an issue to be determined by the trier of fact. See *Swanson*, 58 Ohio St.3d at 193-194, 569 N.E.2d 906.

{¶ 59} An insurer's motion for summary judgment may be properly granted when intent may be inferred as a matter of law. In cases such as this one, where the insured's act does not necessarily result in harm, we cannot infer an intent to cause injury as a matter of law. We therefore hold that summary judgment is not proper. In a declaratory action like this, the trier of fact on remand must weigh the facts in evidence to determine whether the boys intended or expected harm and, consequently, whether the insurance agreements provide coverage in this case.

### F. American Southern Policy's Exclusionary Language

{¶ 60} The policy issued by American Southern contains exclusionary language that differs from that found in the Allstate, Erie, and Grange policies, as well as the policies at issue in *Gill*, *Swanson*, and *Gearing*. American Southern's policy states that coverage does not apply to " 'bodily injury' or 'property damage' which results directly or indirectly from * * * an intentional act of any 'insured.' " The American Southern policy is written in an extremely broad manner that declares that American Southern is not liable for harm resulting from any intentional act done by an insured. This language stands in stark contrast to the language of the other insurance policies at issue in this case, which exclude from coverage harm that is expected or intended by the insured.

{¶ 61} By using broad exclusionary language excluding coverage for harm caused by any intentional act – regardless of whether the harm is expected or intended by the insured – American Southern has worded its policy in a manner that frees it from the line of analysis found in *Gill*, *Swanson*, and *Gearing*. In those three cases, each insurance policy excluded coverage for harm that was "caused intentionally" or "expected or intended" by the insured. *Gill*, 30 Ohio

16

St.3d at 113, 30 OBR 424, 507 N.E.2d 1118; *Swanson*, 58 Ohio St.3d at 191, 569 N.E.2d 906; *Gearing*, 76 Ohio St.3d at 36, 665 N.E.2d 1115. While those cases contained exclusions for an intentional or expected *injury*, American Southern's policy addresses an intentional *act*. Given the significantly different and unambiguous language of the American Southern policy, we must conclude that as a matter of law, American Southern is under no duty to defend or indemnify Dailyn Campbell or his family for any liability resulting from his intentional acts in participating in the events at issue in this case.

### III. Conclusion

{¶ 62} We hold that as applied to an insurance policy's intentional-act exclusion, the doctrine of inferred intent is not limited to cases of sexual molestation or homicide. Nevertheless, the doctrine of inferred intent applies only in cases in which the insured's intentional act and the harm caused by that act are intrinsically tied so that the harm necessarily results from the act. Because the doctrine of inferred intent does not apply to the circumstances of this case, we further hold that under the Allstate, Erie, and Grange policies, the trier of fact must conduct a factual inquiry on remand to determine whether the boys intended or expected the harm that resulted from their intentional actions. We thus affirm the court of appeals' judgment that the trial court erred in granting the motions for summary judgment of Allstate, Erie, and Grange.

{¶ 63} We reverse the judgment of the court of appeals as it applies to American Southern and reinstate the finding of the trial court that there is no coverage under the American Southern policy and that American Southern is accordingly under no duty to defend or indemnify Dailyn Campbell and his parent.

Judgment affirmed in part
and reversed in part,
and cause remanded.

O'CONNOR, J., concurs.

BROWN, C.J., and PFEIFER, J., concur in the syllabus and in part of the judgment.

LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., concur in paragraph one of the syllabus and in part of the judgment.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 64} I concur with the majority opinion except for its reversal of the judgment of the court of appeals as it applies to American Southern. I would hold that the exclusionary language in the American Southern policy is not materially different from the language in the other policies and would therefore affirm the decision below.

{¶ 65} The American Southern policy reads:

{¶ 66} "Liability and Medical Payment Coverage does not apply to 'bodily injury' or 'property damage' which results directly or indirectly from * * * an intentional act of any 'insured' or an act done at the direction of any 'insured.' "

{¶ 67} The exclusion cannot be as broad as envisioned by the majority. Most accidents are the result of intentional acts – it is the result that is unintended. If a homeowner intentionally leaves his rake in the yard with the intention of returning to his gardening after a short water break and a neighbor steps on the rake and punctures his foot and breaks his nose, is there no coverage? Here, as in the other policies, the exclusion applies to instances where the insured intends to cause harm. Otherwise, there would be no coverage for any injury that resulted from any waking, nonreflexive act of an insured.

BROWN, C.J., concurs in the foregoing opinion.

_____

**O'DONNELL, J., concurring in part and dissenting in part.**

18

**{¶ 68}** While I agree with the majority that the doctrine of inferred intent, as applied to an insurance policy's intentional-act exclusion, is not limited to cases of sexual molestation or homicide, I dissent from the majority's holding that the doctrine "applies only in cases in which the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm."

### Factual Background and Procedural History

**{¶ 69}** On the evening of November 18, 2005, a group of high school teenagers, Dailyn Campbell, Corey Manns, Josh Lowe, Jesse Howard, and Taylor Rogers, took an artificial deer – the kind bow hunters use for target practice – from a property near Campbell's home. They brought it to Lowe's house, where they spray-painted profanity and the words "hit me" on it and fashioned wooden legs so it would stand upright. Two other friends, Carson Barnes and Joey Ramge, arrived at Lowe's house as they finished painting, and then all except Rogers, who had become ill, drove to County Road 144, a 55 m.p.h. two-lane road in Hardin County. Sometime between 9 and 9:30 p.m., Campbell stood the deer upright in the eastbound lane of C.R. 144 just over the crest of a grade so it could not be seen by approaching motorists until they came within 15 to 30 yards of it. Thereafter, the teens drove back and forth along C.R. 144 to watch the reactions of the drivers as they encountered the deer. Within five to seven minutes after Campbell placed the deer in the roadway, appellee Robert Roby, operating a 2005 Dodge Neon, swerved to avoid hitting the deer but lost control of his vehicle, drove off the road, and rolled his car into a cornfield. Both Roby and appellee Dustin Zachariah, his passenger, were thrown from the vehicle during the crash, and both sustained serious injuries: Roby sustained permanent physical injuries, and Zachariah suffered fractures of his collar bone, sternum, and ribs, a collapsed lung, and bruises to his heart, brain, and other parts of his body. Each filed a personal-injury action in the Franklin County Court of Common Pleas.

**{¶ 70}** Allstate Insurance Company, American Southern Insurance Company, Erie Insurance Exchange, and Grange Mutual Casualty Company all sought declaratory judgment that they had no duty to defend or indemnify their insureds, the teenagers and their parents, in these actions, asserting that the injuries did not result from an "occurrence" within the meaning of the homeowners' policies and were therefore excluded from coverage pursuant to the policies' intentional-act exclusions. The policies issued by the four insurance carriers contained similar language providing coverage for bodily injury arising from an "occurrence," which the policies all defined as an accident. The Allstate, Erie, and Grange policies exclude coverage for bodily injury or property damage "intended by," or that may reasonably be "expected" to result from an intentional act, while the American Southern policy excludes coverage for bodily injury or property damage resulting "directly or indirectly from" an "intentional act of any 'insured.' "

**{¶ 71}** The trial court found that the act of placing the deer in the roadway resulted in a substantial certainty of harm and therefore ruled that the doctrine of inferred intent applied to the circumstances of the case. Consequently, the trial court inferred the intent to cause injury or property damage as a matter of law and granted summary judgment in favor of the carriers, concluding that they had no duty to defend or indemnify their insureds in the pending actions. In a split decision, the court of appeals reversed the grant of summary judgment because it determined that questions of fact remained regarding the certainty of harm resulting from the teenagers' actions, and because it would not infer the intent to cause injury as a matter of law. *Allstate Ins. Co. v. Campbell*, Franklin App. Nos. 09AP-306, 09AP-307, 09AP-308, 09AP-309, 09AP-318, 09AP-319, 09AP-320, and 09AP-321, 2009-Ohio-6055, ¶ 57-58.

**{¶ 72}** The carriers appealed, and we accepted jurisdiction to examine two issues: one, whether the doctrine of inferred intent as applied to an intentional-act

exclusion in an insurance policy is limited to cases of sexual molestation or homicide, and two, whether the Allstate's and Grange's policies' exclusionary language denotes an objective standard of coverage, rendering an insured's subjective intent irrelevant. *Allstate Ins. Co. v. Campbell*, 124 Ohio St.3d 1506, 2010-Ohio-799, 922 N.E.2d 969.

**Doctrine of Inferred Intent**

{¶ 73} In *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 665 N.E.2d 1115, this court examined whether an insurance company is obligated to defend and indemnify an insured in civil litigation arising out of the insured's sexual molestation of three minors. There we recognized the doctrine of inferred intent and set forth a test for its application, stating that "in those cases where an intentional act is substantially certain to cause injury, determination of an insured's subjective intent, or lack of subjective intent, is not conclusive as to the issue of coverage. Rather, an insured's protestations that he 'didn't mean to hurt anyone' are only relevant where the intentional act at issue is not substantially certain to result in injury." Id. at 39.

{¶ 74} Applying the "substantial certainty" test in *Gearing*, we determined that intent to harm is properly inferred as a matter of law because the act of molestation is so inherently injurious that it cannot be performed without causing the resulting injury. Id. at 39, 40. Because Gearing's insurance policy contained an exclusion for bodily injury or property damage "expected or intended by the insured," we held that the insurance company was not obligated to defend him in the civil suit arising out of that conduct. Id. at 36.

{¶ 75} Three years later, *Buckeye Union Ins. Co. v. New England Ins. Co.* (1999), 87 Ohio St.3d 280, 720 N.E.2d 495, presented the question of whether intent could be inferred as a matter of law from an insurance company's bad-faith refusal to settle a claim. The court noted that it had inferred intent as a matter of law in only two cases, *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108,

30 OBR 424, 507 N.C.2d 1118, and *Gearing*, and that in both cases, the insureds were found to have committed wrongful acts (aggravated murder and sexual molestation, respectively), which are "intentionally injurious by definition." *Buckeye Union* at 284. Concluding that settling an insurance claim is an act of contract interpretation and that a settlement may be properly refused in certain circumstances, the court declined to infer intent to injure in the case, holding that it would "not place failure to settle an insurance claim on the[] same plane" as murder and molestation, which "do not enjoy similar sometime rectitude." Id. However, in an opinion concurring in judgment only, Justice Cook explained that by failing to apply the "substantial certainty" test, the majority's analysis misconstrued Ohio law by overlooking the standard set forth in *Gearing*. Id. at 288 (Cook, J., concurring). Justice Cook further cautioned that the court "ought not to depart from *Gearing*, as the departure does nothing to clarify the analysis of this issue," and instead "imposes an inadequate subjective test, coupled with an undefined category of inferred intent acts." Id. at 291-292.

### Confusion Regarding the Substantial Certainty Test

{¶ 76} In my view, the majority today continues the retreat from the substantial-certainty test set forth in *Gearing* by directing courts to infer intent as a matter of law "only in cases in which the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm." The majority justifies its adoption of this new test by stating that *Gearing* "did not address the question of whether intent may be inferred in cases involving acts other than sexual molestation or murder" and that as a result, "[a] close examination of Gearing * * * reveals that this court has limited the scope of inferred intent."

{¶ 77} I disagree with this narrow reading of *Gearing* and the artificial limitation on the doctrine of inferred intent. *Gearing* recognized that the substantial-certainty test "is inherent in our past decisions," 76 Ohio St.3d at 39,

665 N.E.2d 1115, including our decision in *Physicians Ins. Co. v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, where we held that the intentional shooting of a BB gun would not necessarily have resulted in the injury and approved of the premise that " 'resulting injury which ensues from the volitional act of an insured is still an "accident" within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm *or is not substantially certain that such harm will occur*.' " (Emphasis added.) Id. at 193, quoting *Quincy Mut. Fire Ins. Co. v. Abernathy* (1984), 393 Mass. 81, 84 469 N.E.2d 797. Thus, in *Gearing*, the court contemplated that the test could be applied in circumstances beyond molestation. The court's lack of speculation as to specific circumstances in which the test would permit an inference of intent as a matter of law is in keeping with the proper role of the court to decide only those issues before it. Opinions should be confined to the facts presented by the case, and therefore, no inference can or should be made from the manner in which the court wrote *Gearing* with respect to the court's intent to limit or expand the scope of the doctrine of inferred intent.

**{¶ 78}** We adhere to our precedent in conformity with a doctrine known as stare decisis et non quieta movere – "to stand by things decided, and not to disturb settled points." See Black's Law Dictionary (9th Ed.2009) 1537. Our prior decisions have established the law of the doctrine of inferred intent, and the courts below applied it. We have a body of case authority designed to deal with circumstances arising from those who engage in conduct that is so inherently injurious that it cannot be performed without causing resulting injury. Intent to injure is properly inferred as a matter of law from the act of placing an obstruction out of the line of sight of a motorist below the crest of a grade at night, in the middle of a lane of eastbound traffic on a 55 m.p.h. highway, because that act is substantially certain to cause injury. Here, the teens anticipated injury because they repeatedly drove past the deer to witness the reactions of oncoming motorists

as they encountered the deer, and their deposition testimony is that they witnessed Roby drive past them, and they witnessed the aftermath of the crash. These actions more than suggest that they knew that injury would occur; they anticipated it and waited for it. Our case law applies to these circumstances because these teens knew injury would result from their conduct. Because their deliberate actions were designed to result in injury substantially certain to occur, the injury to Roby and Zachariah was not an accident, and thus not an occurrence as defined by the language in these policies. As a result, the exclusions in each of these policies should apply to the facts of these cases. Accordingly, the insurance companies should have no duty to defend or indemnify their insured because these injuries resulted from an intentional act, and the policies exclude coverage for intentional acts. Thus, I would reverse the judgment of the Tenth District Court of Appeals and reinstate the judgment of the trial court. Because today the majority departs from and confuses our established case law on the doctrine of inferred intent and our holding in *Gearing* and instead adopts its own preferred test for the application of the inferred-intent rule, I respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

**CUPP, J., concurring in part and dissenting in part.**

{¶ 79} I concur in paragraph one of the syllabus, which holds, "As applied to an insurance policy's intentional-act exclusion, the doctrine of inferred intent is not limited to cases of sexual molestation or homicide." I also concur in part in the court's judgment insofar as it affirms the court of appeals' judgment that the trial court erred in granting Erie's and Grange's motions for summary judgment.

{¶ 80} I further agree with the court that there is no coverage under the American Southern policy and that American Southern is therefore under no duty to defend or indemnify Dailyn Campbell and his parent. For that reason, I concur

in part in the court's judgment insofar as it reverses the judgment of the court of appeals as it applies to American Southern.

{¶ 81} However, unlike the majority, I conclude that there is no coverage under Allstate Insurance Company's policy. In contrast to the other policies in this case, which exclude from coverage harm that is expected or intended by the insured, the Allstate policy includes language that excludes coverage for bodily injury or property damage "which may reasonably be expected to result from the intentional or criminal acts or omissions of" an insured. As the majority concludes with regard to the American Southern policy, language that excludes bodily injury or property damage that results from "an intentional act" of the insured is broad. The Allstate policy's addition of the qualifier that the harm must have been "reasonably" expected to result from the intentional act, in my view, does not warrant different treatment of the Allstate policy from the American Southern policy. While the car crash that occurred in this case was not "certain" to occur— at least in the manner that it did—it is hard to dispute that such an event could "reasonably" be expected to result from the "intentional * * * acts" of the teenagers in this case, a more objective than subjective standard. In my view, there is no genuine issue of material fact with regard to that issue under Allstate's policy, because under the objective "reasonably * * * expected to result" standard in that policy, the boys' professed subjective intent not to harm anyone is immaterial. Accordingly, I also would reverse the judgment of the court of appeals with regard to Allstate and reinstate the trial court's summary judgment in favor of Allstate. I would hold that Allstate is under no duty to defend or indemnify Dailyn Campbell's parent and the parents of Jesse Howard.

—————————————

Crabbe, Browne & James, L.L.P., and Daniel J. Hurley, for appellant Allstate Insurance Company.

Mazza & Associates and Robert H. Willard, for appellant American Southern Insurance Company.

Caborn & Butauski Co., L.P.A., David A. Caborn, and Elizabeth D. Owsley, for appellant Erie Insurance Exchange.

Gary L. Grubler, for appellant Grange Mutual Casualty Company.

Karr & Sherman Co., L.P.A., Keith M. Karr, and David W. Culley, for appellee Robert J. Roby Jr.

Paul O. Scott Co., L.P.A., and Paul O. Scott, for appellees Dustin S. Zachariah and Katherine E. Piper.

Reminger Co., L.P.A., Brian D. Sullivan, and Clifford C. Masch, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers, urging affirmance for amicus curiae Ohio Association for Justice.

_____